JAMES T. WHITE ET AL *v.* GEORGE LEATHERBERRY ET AL.

CONTRACT. *Breach. Profits. When recovered. Established business.*

The anticipated profits of an established business, which would not be speculative, but the direct and immediate fruits attending the performance of a contract, may be recovered for its breach.

FROM the circuit court of Jackson county.

HON. WILLIAM T. McDONALD, Judge.

White and another, appellants, were plaintiffs and Leatherberry and another, appellees, were defendants in the court below.

The defendants' demurrer to plaintiffs' declaration was sustained in the court below; plaintiffs did not amend, a judgment final was rendered in defendant's favor and plaintiffs appealed to the supreme court. The opinion of the court states the facts.

*Dodds & Griffith,* for appellants.

If chattels are purchased for resale, and upon breach of the executory contract of purchaser, other goods cannot be obtained

for such resale, the difference between the market price at the place of resale and the contract price may be recovered. This rule is laid down in all the books. American & English Encyclopedia, first and second editions, Sedgwick on Damages, Wood's Mayne on Damages, Hale on Damages and the other texts, and we will cite three lumber cases as follows:

*Campbellsville Lumber Co.* v. *Bradlee et al,* 29 S. W. (Ky.), 313, where it was held that the proper measure of damages was "the difference between the contract price and the value of such lumber in the markets where plaintiff traded, less the cost of transportation," and

*Cockburn* v. *Ashland Lumber Co.,* 12 N. W. (Wis.), 49, where it was held that the damages would be ascertained by adding to the contract price of the lumber the cost of transporting it, including the insurance and fees of inspection and any other expenses necessary in putting the lumber on the market at Q, and deducting this amount from the market price at Q; and

*Trigg et al* v. *Clay et al,* 13 S. E. (Va.), 434, goes even further than the two first above, and cites many authorities.

In the instant case appellants bought the logs for the purpose of reselling them—as lumber indeed, but the cost of the logs added to the cost of sawing them is the cost of the lumber, and under the principle invoked the difference between this and the market price of the lumber is the measure of damages. This is and was an established sawmill business; the cost of changing the logs into lumber is susceptible of almost exact computation and proof; these people from their whole past experience can figure to the dollar how much it cost them to so prepare their lumber; it can be made as certain as transportation, insurance and other expenses mentioned in Cockburn case, 12 N. W., 49, *supra.* By defendants' breach they were prevented from so preparing the logs and selling them as prepared for the market. We urge upon the court the difference between a new business and an established one; they stand on entirely different

footings.    An established business can show the necessary data; a new business can only guess.    It was at one time laid down that no damages could be recovered for the loss of profits. It is well stated now, however, that such damages may be recovered, and the usual and ordinary profits of an established business are reasonably certain, and may be recovered in an action involving the interruption of the business.    Hale on. Damages (a new work on the subject), p. 72-4.

*Ford & White,* for appellees.

The damages claimed are purely speculative, and cannot be recovered.    The measure of damages for the breach of a contract for the sale of saw logs, is the difference, at the time of the breach, between the contract price and the market price of the commodity.    *Bickell* v. *Colton,* 41 Miss., 368; *Kodish* v. *Young,* 48 Am. Rep., 548; *Murray* v. *Dowd,* 59 Am. St. Rep., 297.

The damages claimed in this case fall clearly within the rule announced in the case of *Hadley* v. *Boxendale,* 9 Exch., 341, and followed by this court in the case of the *Vicksburg, etc. R. Co.* v. *Ragsdale,* 46 Miss., 458, and all subsequent cases bearing on the subject.

WHITFIELD, C. J., delivered the opinion of the court.

The court erred in sustaining the demurrer to the declaration in this case.    The declaration was drawn with exceptional care and ability, and omits no allegation necessary to the statement of a good cause of action.    The case should have been developed on its facts.    The very ingenious and able argument of counsel for appellee is out of place in support of a demurrer which admits as true the averments of this declaration.    It would have been very pertinent, had the case gone to the jury, when the time to settle the instructions had come.    The declaration avers that the defendant failed to deliver 1,057 logs; that the business of plaintiff was an established sawmill business;

that its business was interrupted by reason of the failure to deliver for fourteen days; that the 1,057 logs would have sawed up into 246,400 feet of lumber; that the net profits of the plaintiff, above each and every item of expense, would have been $3 per thousand feet; that the plaintiff would have made this profit in the ordinary course of its business; that, when so .converted into lumber, the lumber would have been put upon the market for sale, in the usual and ordinary course of the plaintiff's said business; that there was an established and well-known market price for such lumber at Moss Point—the place of delivery; that plaintiff would have immediately sold all of the lumber on said market at a profit of $3 per thousand · feet; that defendant well knew the purpose and use for which the plaintiff had bought said logs, and that loss would likely come by its failure to deliver said logs, as a natural and proximate consequence of such failure, in the ordinary course of the sawmill and lumber business; and that the defendant, through its officers and agents, was well acquainted with all said facts, and that said consequences were within the contemplation of the parties at the time of the making of said contract. It must be perfectly obvious that a demurrer which admitted these facts could not properly be sustained.

The true measure of damages in cases of this sort is that stated in *Campbellsville Lumber Co.* v. *Bradlee et al* (Ky.), 29 S. W., 314, where the court says: "The only question about which there need be any discussion is whether the following instruction was properly given: 'The court instructs the jury that in arriving at the amount of damages, if any, they will take into consideration the difference between the contract price and the value of such lumber in the market where plaintiff traded, less the cost of transportation.' In Sedgwick on Damages, § 734, it is said: 'When contracts for the sale of chattels are broken by the vendor failing to deliver the property according to the terms of the bargain, it seems to be well settled, as a general rule, both in England and the United States, that the

measure of damages is the difference between the contract price and the market value of the article at the time when and place where it should have been delivered, with interest.' And this court has often sanctioned that general rule. But it does not govern where its application would change the contract actually made, or contravene the intention of the parties. Therefore, when the vendor knows his chattels are being purchased for resale at a particular place, he should be held to have contemplated, as a probable result of his failure or refusal to deliver according to the contract, a recovery by the purchaser of the difference between the contract price and market value at such place of resale, less cost of transportation."

So, in *Trigg* v. *Clay* (Va.), 13 S. E., 435; 29 Am. St. Rep., 723, in stating the measure of damages proper in lumber contracts of this character, the court says: "Under the circumstances of this case, the commissioner ascertained the true and just amount of the damages. It has been often held that profits which are the direct and immediate fruits of the contract are recoverable. There are many cases in which the profits to be made by the bargain is the only thing purchased, and in such cases the amount of such profit is strictly the measure of damages. Wood's Mayne, Dam. p. 82. It has been held that, when the defendant refused to allow the contracts to be executed, the jury should allow the plaintiffs as much as the contract would have benefited them — profits or advantages which are the direct and immediate fruits of the contract entered into between the parties, and part and parcel of the contract itself, entering into and constituting a portion of its very element, something stipulated for, and the right to the enjoyment of which is just as clear and plain as the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement. If the inducement to the plaintiffs to buy this lumber — they being lumber dealers, and trading in lumber — was not the

profits they were to make by a resale, what was their induce-
ment? And if the sellers did not understand and contemplate
this resale on a profit, what contemplation on the subject can
be reasonably ascribed to them? *See Masterton* v. *Mayor,* etc.,
7 Hill, 62 (42 Am. Dec., 38); *Morrison* v. *Lovejoy,* 6 Minn.,
39 (Gil., 224); *Fox* v. *Harding,* 7 Cush., 516; *Devlin* v.
*Mayor, etc.,* 63 N. Y., 8; *McAndrews* v. *Tippett,* 39 N. J. Law;
105; *Kendall Bank Note Co.* v. *Commissioners of the Sinking
Fund,* 79 Va., 563; *Bell* v. *Reynolds,* 78 Ala., 511 (56 Am,
Rep., 52). An examination of the cases will show that the
courts have been endeavoring to establish rules by the applica-
tion of which a party will be compensated for the loss sustained
by the breach of contract; in other words, for the penefits and
gain he would have realized from its performance, and noth-
ing more. It is sometimes said that the profit that would have
been derived from the performance cannot be recovered; but
this is only true of such as are contingent upon some other
operation. Profits which certainly would have been realized
but for the defendant's default are recoverable."

See, also, as directly in point, *The Miss. Boom Co.* v. *Prince*
(Minn.), 24 N. W., 346; *Cockburn* v. *Ashand Lumber Co.*
(Wis.), 12 N. W., 50-53, inclusive. Special attention is called
to this last case, the court observing, at page 53, as follows:
"Whether the plaintiffs intended to sell the deals in the Quebec
market or not, they purchased them for shipment to that mar-
ket, and for some use there, and by any just rule they are en-
titled, under the peculiar circumstances of the case, to have the
benefit of the market price there in the estimate of their dam-
ages. We think it may reasonably be supposed that the parties
contemplated this as a result of a breach of the defendant's
agreement to deliver the deals. The defenadnt company was
cognizant of facts which make such presumption almost con-
clusive against it. Hence, within the rule of *Hadley* v. *Baxen-
dale,* the market price at Quebec of deals like those contracted
for, at the times when in the usual course of transportation they

could have reached there, had both parties fulfilled their contract, say in August and September, 1878, is the basis upon which the plaintiff's damages should be assessed. From this value should be deducted the cost of transportation, including insurance, the fees for inspection, and other expenses (if there were any) usual and necessary to put the deals upon the market. The difference between that balance and the contract price is, we think, the proper measure of the plaintiffs' damages as the case now stands."

It must be borne in mind that this was a contract made in the sawmill business, for the purchase of logs to be manufactured and sold as lumber, and whatever would be the usual course of dealing by the purchaser with the logs purchased, in the usual and ordinary course of such business, must necessarily have been known to the defendant, and within the contemplation of the parties, at the time the contract was made. Ragsdale's case, 46 Miss., 483, states the rule thus: "(1) The proximate and natural consequennces of the breach must always be considered; (2) such consequences as, from the nature and subject-matter of the contract, may be reasonably deemed to have been in the contemplation of the parties at the time it was entered into." It is within this second category that this case falls. It would not be reasonable to hold, in reference to the lumber business as conducted in this state—one of its largest and most important interests—that one contracting with reference to that business, as the defendant is averred to have done here, knowing that the logs were bought for resale after having been manufactured into lumber, perfectly aware that the plaintiff's business was an established one, and that there was already a market at special market price for the manufactured lumber, should be permitted to say that he did not have in contemplation, at the time of the contract, the course of dealing uniformly obtaining in that business under such circumstances. It will be noted that in the Ragsdale case, at page 484, 46 Miss., the fifth category stated by Judge Simrall refers

alone to a "new business." The declaration specially avers this business to have been an "established" one, and a different principle obtains in reference to an established business as to the rule of damages, as pointed out in the authorities collated in the brief of counsel for appellant.

It will be observed that we are dealing alone with the demurrer. If, when the proof comes, the averments of the declaration shall not be maintained, it will be time enough to deal with profits that are purely speculative, by proper charges to the jury. But on this declaration—one of the most accurately drawn that has ever come before this court—the demurrer should have been overruled.

*Judgment reversed, demurrer overruled, and cause remanded.*