## WILLIAM G. BEACH *v*. J. N. JOHNSON.

### [59 South. 800.]

1. BREACH OF CONTRACT. *Compensatory damages. Complete perform-ance. Uncertainty. Profits.*

   If complete performance of a contract is prevented by either party, the other, who is willing and able to perform must be compensated in damages to the extent of making him whole.

2. DAMAGES. *Uncertainty. Contingency.*

   The rule that damages which are uncertain or contingent cannot be recovered does not apply to an uncertainty as to the value of the benefit or gain to be derived from performance, but to an uncertainty or contingency as to whether any such gain or benefit would be derived at all.

3. COMPENSATORY DAMAGES. *Profits.*

   In a suit for damages for breach of contract, where the defendant refused to allow the contract to be executed, the jury should allow the plaintiff as much as the contract would have benefited him, taking into consideration the probable earnings and profits which he would have made had the contract been carried out, but which plaintiff failed to receive because of defendant's refusal to allow him to perform his contract.

APPEAL from the circuit court of Sunflower county. HON. J. M. CASHIN, Judge.

Suit by William G. Beach against J. N. Johnson. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*A. J. Rose,* for appellant.

Plaintiff's testimony clearly shows that the profits of this business were within the contemplation of both parties at the time of making the contract and that the loss of these profits was the proximate and natural result of the breach of the contract.

The testimony is that the plaintiff and defendant had been in the same business in the same neighborhood for

more than three months prior to May 1910, the plaintiff doing all of the work and the profits being divided between them. When the contract was made in May 1910, the only value it had to plaintiff was the profit he would make out of it and the defendant knew when he made the contract that this was its only value to plaintiff. In other words, it was particularly one of those many cases "in which the profits to be made by the bargain is the only thing purchased, and in such cases the amount of such profits is strictly the measure of damages." Wood's Mayne Damages, page 82, cited and approved in *White* v. *Leatherberry,* 82 Miss. 103, 107.

The broad general rule is that the plaintiff may recover such damages including gains prevented as well as losses sustained, as may reasonably be supposed to have been within the contemplation of both parties at the time of the making of the contract, as the proximate and natural consequence of a breach by defendant; and in determining what may reasonably be supposed to have been within the contemplation of the parties as a natural consequence of a breach, all the facts surrounding the execution of the contract known to both parties may be considered. *Blager* v. *Thompson,* 18 L. R. A. (Or.) 315, 317, 318.

The defendant knew when he made the contract that its only value to plaintiff was the profit to be derived. It had no other value. The profits to be made were the only consideration for the execution of the contract, and this was known by both parties when the contract was entered into.

The defendant knew when making the contract that if it was breached by him the natural and proximate results would be the loss of the profits to the plaintiff. It was certainly within the contemplation of both parties that this loss of profits would be the natural consequence of a breach of the contract. The testimony of the plaintiff certainly showed this and it stands uncontradicted.

Johnson, the defendant, a plantation owner,· had an arrangement with the plaintiff to operate his blacksmith's shop and the profits arising therefrom were divided between them. It was a convenience to the defendant and a source of profit to both parties. The plaintiff was paid for his labor by receiving half the profits. When this arrangement terminated and the new contract of May, 1910, was entered into whereby the defendant rented the plaintiff his shop and agreed to sell him the tools and material at an agreed price, the compensation to the plaintiff, under this contract, was the profit to be derived. There was no other value to the contract for the plaintiff except the profits. And it was permissible· to show all the facts surrounding the execution of the contract, including the previous contract between the same parties in relation to the same kind of business. *Blager* v. *Thompson,* 18 L. R. A. 315.

It was not difficult for plaintiff to show the reasonable profits of this buisness for its unexpired term, because he could do so by showing that in a similar business conducted by the same parties, in the same neighborhood, for three months immediately preceding May, 1910, had shown monthly profits, and what those monthly profits were, and also by showing the profits of this particular business from the first week in May, 1910, to the time of its breach by defendant on June 1, 1910.

Where by a contract a party is to perform labor from which a profit is to spring is the direct result of work done, and he is prevented from earning this profit by the· wrongful act of the· other party, the loss of the profit is a direct and natural result which the law will presume to follow the breach of the contract. *Burrell* v. *N. Y. S. S. Salt,* 14 Mich. 34; *Elizabethtown & P. R. Co.* v. *Bettinger,* 10 Bush. 185.

."In many cases profits are the very subject of the inducement to the contract and so understood by both parties, and then, therefore, they are not only recoverable

but constitute the true measure of damages to the extent to which they may be ascertained." 8 Am. & Eng. Ency. of Law (2 Ed.), 622, note 1.

The case made by the testimony of the plaintiff brings us directly within the foregoing principle, for according to the plaintiff's testimony the profits of the contract were the very object and inducement which lead to it and it was so understood by both parties.

The same authority, 8 Am. & Eng. Ency. p. 620, states the rule to be that where it is made to appear reasonably certain that profits would have been made or have been lost, but for or by the act complained of and sufficient evidence is given of the amount there may be a recovery of damages therefor. The earlier cases exclude the recovery of profits, but this early policy has been modified with reference both to torts and to actions on contract as to the exclusion of profits from recovery for breach of contract. 8 Am. & Eng. Ency. 617, 618.

In this case there was not only a breach of contract by the defendant, but the breach was a tortious act and the defendant was therefore responsible for all the injuries in consequence of that act according to the usual course of events and general experience which were likely to ensue and which, therefore, when the act was committed, he may be reasonably supposed to have fully seen and anticipated. 1 Sutherland on Damages (3 Ed.), sec. 45, page 135.

The court held in this case that the loss of profits was not the natural proximate result of the breach of the contract, but this was a question of fact for the jury under proper instructions from the court. 8 Am. & Eng. Ency. of Law, 581.

The defendant having made a contract for his own benefit, and out of which the only benefit that would accrue to the plaintiff would be the profits that the plaintiff would make in the performance of the contract, it does not lie with the defendant to say, after having

breached the contract, that no profit would be made, or that none would be prevented. The data to show the monthly profits which would have been made is not necessarily one of science or legal knowledge, but for the jury to determine in view of the accompanying circumstances in accordance with common sense and understanding. 8 Am. & Eng. Ency. of Law, 581.

In Taylor v. Bradley, 39 N. Y. 129, the action was to recover damages for the breach by the defendant of a contract to let a farm to the plaintiff for three years, each party to furnish part of the stock, seed tools, etc., the plaintiff to occupy and work the farm and have certain supplies for his family, and all proceeds to be divided equally, and it was held that the plaintiff was entitled to recover as damages the value of the contract, that is, what such a privilege of occupancy and working the farm, subject to the conditions of the agreement, and under all the contingencies which were liable to affect the result were worth. WOODRUFF, J., writing the opinion said:

"To my mind the only rule which will do justice to the parties is that the plaintiff is entitled to the value of his contract; he was entitled to its performance; it is broken; he is deprived of his adventure; what was this opportunity which the contract has apparently secured to him worth? To reap the benefit of it he must incur expense, submit to labor and appropriation of his stock. His damages and what he lost by being deprived of his chance of profit."

And Judge GROVER, in his opinion on the same case said:

"An examination of the case will show that the courts have been endeavoring to establish rules by the application of which a party will be compensated for the loss sustained by the breach of the contract: In other words, for the benefit and gains he would have realized from its performance and nothing more. . . . Profits which

would have actually been realized but for the defendant's default are recovereable. . . . It is sometimes said, that speculative damages cannot be recovered because the amount is uncertain; but such remarks will generally be found applicable to such damages as it is uncertain whether sustained at all from the breach.''

In *Simpson* v. *London, etc.,* 1 Q. B. D. 274; s. c., 16 Eng. Rep. 230, COCKBURN, C. J. said:

''As to the supposed impossibility of ascertaining the damages I think there is no such impossibility; to some extent, no doubt, they must be matters of speculation, but that is no reason for not awarding any damages at all.''

In the case of *Jacques* v. *Miller,* 6 Ch. Div. 153; s. c., 22 Eng. Rep. 728, the plaintiff agreed with the defendant to take a lease of premises belonging to the defendant for the purpose, as the defendant knew, of carrying on a trade which the plaintiff was about to commence. In consequence of the defendant's wilfull refusal to fulfill his agreement, the plaintiff was unable for fifteen weeks to commence his trade, and it was held that in addition to judgment for specific performance of the contract, damages must be awarded in respect to plaintiff's loss of profit from his work during the fifteen weeks.

In the instant case there is no more difficulty in arriving at the loss of profit which would have been made, based upon profits which had been made in similar work and under similar conditions, than there was in the preceeding case in ascertaining the loss of profit for the fifteen weeks in which plaintiff was unable to commence his trade.

In *Wakerman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205, the court in speaking upon the question of the recovery or loss of profits says:

''They are nearly always involved in some uncertainty and contingency; usually they are to be worked out in the future, and they can be determined only approximately

upon reasonable conjecture and possible estimates. They may be so uncertain, contingent and imaginary as to be incapable of adequate proof, and then they cannot be recovered because they cannot be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can be no good reason for refusing, on account of such uncertainty, any damages whatever for the breach. . . . It is difficult to comprehend why, in case one party has deprived the other of the gains or profits of the contract by refusing to perform it, this loss should not constitute a proper item in estimating the damages." See *Bagley* v. *Smith,* 10 N. Y. 489.

*Chapman & Johnson,* for appellee.

The general rule of law is that compensation may be recovered only for proximate losses, resulting from wrongful conduct, and never for any losses which are remote; losses are for convenience divided into two classes: (a) Direct, and (b) consequential. Consequential losses are the indirect losses caused by a wrong but to which some intermediate cause has contributed, and they are either proximate or remote; compensation cannot be recovered unless the loss is the proximate result of the primary fault; only such consequential losses as were natural and probable under the circumstances contemplated by the parties, at the time the contract was made, are compensated; losses must be certain in amount, and certain in respect to the cause from which they proceed, or damages therefor cannot be recovered.

The case of *Blager* v. *Thompson,* 18 L. R. A. (Ore.) 315, quoted by appellant says: "The broad general rule is that the plaintiff may recover such damages, including gains prevented, as well as losses sustained, as may reasonably be supposed to have been within the contemplation of both parties at the time of the making of the contract as the proximate and natural consequences

of a breach by defendant; and in determining what may reasonably be supposed to have been within the contemplation of the parties as the natural consequences of a breach, all the facts surrounding the execution of the contract known to both parties, may be considered.'' The court in this case held further: ''The rule that damages which are uncertain and contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all.''

There is no evidence in this case from which it can be concluded with any degree of certainty that the interruption of appellant's lease contract caused him any loss of profits; if he had tried to do so he could possibly have rented another blacksmith shop in the same locality, and made just as much money in that house as the one from which he claims to have been evicted; if he had been permitted to stay in business at Holly Ridge in the same shop, it is wholly a matter of speculation as to what his profits would have been, as his business had not become an established one, he having resided there only about a month, during which time he claims to have done fairly well, but there is no testimony from which the court could say that he would have continued to make one hundred and twenty-three dollars per month, seventy-five dollars per month, or any other sum. The very next month a competitor might have come in and taken all of his business, or some contingency of that kind might have happened. So there is an uncertainty and contingency as to whether the gain or benefits which he claims would have been derived at all.

The cases of *Burrell* v. *N. Y. S. S. Salt*, 14 Mich. 34, *Elizabethtown & P. R. Co.* v. *Bettinger*, 10 Bush, 185, cited in appellant's brief, are not in point, because there is a clear distinction to be drawn between cases awarding damages for the wrongful prevention of a profit from

labor to be performed, and the wrongful prevention of future, contingent, and speculative profits; in the first instance the amount of profit is absolutely fixed and certain, but in the latter it is impossible to tell what would be the damages, or if there would be any damage.

Appellant contends that in this case the court should not have held that the loss of profits was not the natural proximate result of the breach of the contract, but should have submitted that proposition as a question of fact for the jury, under proper instructions, and he cites 8 Am. & Eng. Ency. of Law, p. 581; we quote from that citation on this point:

"The question as to what is the natural or proximate cause of the loss, or what the probable or intermediate consequences of the given act has been generally held one of fact for the determination of the jury; a question which is ordinarily not one of science or legal knowledge, but is for the jury to determine in view of the accompanying circumstances, and in accordance with common sense and understanding. But the question of natural or proximate cause is not always one for the jury. Indeed, the nature of the question has been said to be one which depends upon the circumstances of the particular case. Thus, though where the question whether or not the consequences of an act for which damages are sought were the natural consequences of the act depends upon whether or not such circumstances would have been foreseen by a person of ordinary prudence, it is proper to submit the issue to a jury; yet in actions for damages for the breach of contracts where recovery is sought for losses sustained or gains prevented, it had been held that whether the circumstances from which the loss results, or the gain is prevented, is or is not one which may be reasonably considered to have been in the contemplation of the parties at the time they made the contract, is from the necessity of the case, a preliminary question for the decision of the trial judge,

before evidence of such losses suffered, or gains prevented, can be introduced.'' It is clearly competent for the trial judge, and within his province, to exclude all evidence as to uncertain future profits. See 13 Cyc., p. 57 and 58, *Bierbach* v. *Goodyear Rubber Co.,* 41 Am. Rep. ·(Wis.), p. 19. It was held in *V. M. R. R. Co.* v. *Ragsdale,* 46 Miss. 458, that speculative profits which might be supposed to arise, but which were defeated because of a breach of contract cannot be looked to as an element of damages. The court was certainly correct in holding in this case that the evidence offered by plaintiff as to what his future profits might have been should be excluded.

The case. of *Taylor* v. *Bradley,* 39 N. Y. 129, cited by appellant in support of his claim for future profits, is easily differentiated from the instant case; that was a suit to recover damages for the breach of a contract on ·which it was agreed that the plaintiff was to work certain land belonging to the defendant on shares; the farm ·was to be stocked and furnished mainly by equal contribution of the parties, the plaintiff to wholly furnish some things, and to occupy and work the farm; the defendant to wholly supply and pay·for other things, and to have the privilege of also working and improving the farm; and all the proceeds of the farm over and above keeping the stock thereon, and the use of certain specified articles in the plaintiff's family, were to be divided between the respective parties equally, share and share equal, both as to expenses and profits arising from said farm; the court holds that this agreement does not amount to a lease, and that the relation of landlord and tenant is not contemplated; and the portion of the crops reserved to the owner is not rent but compensation for the use of the land, while the other portion is compensation to the occupier for his work, labor and services, and that the legal possession of the land is in the owner, and the two are tenants in common of the crop: There-

fore, the rule of damages applicable to the breach of a lease contract is not the measure of damages in that case. The general rule for the measure of damages for the breach of a rent contract is the difference between the rent reserved and the value of the premises for the term. See Taylor's Landlord and Tenant (7 Ed.), sec. 317; Wood's Landlord and Tenant, sec. 365; *Dodds* v. *Hakes,* 21 N. E. (N. Y.) 398. In the case of *Dodds* v. *Hakes,* the court says: "The rule in all cases where damages are claimed solely for the failure of the lessor to give the lessee possession of the leased property, is well settled, and limits the plaintiff's recovery to an amount represented by the excess of the actual rental value over the rent reserved in the lease." The court in the case of *Taylor* v. *Bradley, supra,* was fixing a rule for the measure of damages in an entirely different kind of case from the one now before this court.

In the case of *Jacques* v. *Miller,* 6th Ch. Division, 153, cited by appellant, plaintiff agreed with the defendant to take a lease of premises belonging to the defendant for the purpose of carrying on a trade, which the plaintiff was about to commence, and the plaintiff, in consequence of the defendant's refusal to fulfill his agreement, was unable for fifteen weeks to commence his trade, and recovered damages for the loss of profit from his work for that period of time. This case is an English case, and the rule there laid down is not followed in America. See: *Alexander* v. *Bishop,* 59 Iowa, 572, 13 N. W. 714; *Brockway* v. *Thomas,* 36 Ark. 518; *Beidler* v. *Fish,* 14 Ill. App. 623; *Dodds* v. *Hakes,* 21 N. W. 398.

The case of *White et al.* v. *Leatherberry et al.,* 82 Miss. 103 is not in point; in that case the court laid particular stress on the fact that the business was an established business; this was a suit for the failure to deliver one thousand and fifty-seven logs, and the business of an established sawmill was interrupted by reason of the failure to deliver said logs for fourteen days; the logs would

have been made up into a certain number of feet of lumber, and the net profits of the plaintiff would have been three dollars per thousand feet, which would have been made in the ordinary course of business; when the logs were converted into lumber, the lumber would have been put upon the marekt for sale in the usual and ordinary course of plaintiff's business, there being a regular market price for such lumber, of which the defendant knew; and the defendant also knew the purpose for which the plaintiff had bought the logs, and what loss would come on failure of their delivery. The damages in such a case could easily and readily be computed by simple addition and subtraction, and was not speculative or remote. The damages incurred in that case were the natural and proximate consequences of the breach of the contract, and the consequences from the nature and subject-matter of the contract, such as could reasonably have been seen to have been in the contemplation of the parties at the time it was entered into. No new principle is laid down in that case, but the well-settled rule enunciated in the old English case of *Hadley* v. *Baxendale* is followed: there is no analogy between the case now before the court and the case of *White* v. *Leatherberry*.

Formerly the general rule was that damages could not be recovered for loss of profits, because future profits were considered to be uncertain; but now the rule has been changed, and damages may be recovered for such losses, if they are proximate and certain; damages for a breach of contract must be shown with certainty and not left to speculation or conjecture; speculative and contingent profits are not recoverable; the damages must be such as may naturally be supposed to have entered into the contemplation of the parties when they made the contract, and they must be certain both in their nature, and in respect to the cause from which they proceed. Hale on Damages, page 72 and 73. The only damages in contemplation of the parties to this suit from a breach of

the contract between them for the rental of the black-smith shop are the difference between the rental value of the premises and the rent agreed to be paid; speculative profits to be made out by calculation on paper are not allowable; damages to be allowed must be reasonably certain; loss of profits in a business cannot be allowed, unless the data of estimation are so definite and certain that they can be ascertained reasonably by calculation. If a contract is made with reference to embarking in a new business, the speculative profits which might be supposed to arise, but which were defeated because of a breach of the contract which delayed the business, cannot be looked to as an element of damages. *V. & M. Railroad Co.* v. *Ragsdale,* 46 Miss. 458; see specially pages 483 and 484 thereof; *Reed Lumber Company* v. *Lewis,* 10 So. 333. (Ala.) Speculative damages are damages depending upon numerous contingencies, so that their amount is not susceptible of actual proof, with any reasonable degree of certainty and cannot be recovered. 13 Cyc. 36, 51, 52, and 53.

The business of appellant was a new business, and whatever profits he might have made were speculative and remote within the rule above laid down, and therefore not recoverable as damages.

The case of *Myers* v. *Farrell,* 47 Miss. 282, is elucidating. In that case the court says: "Section 1462 of the Code of 1871, enlarges, perhaps, the elements of damages—'loss of trade and special injury to business,' are to be taken into account. But how far may the jury go? If the storehouse of a retail merchant is closed up by an improvidently issued attachment, must the jury go into a calculation of profits which the trader may take, which are contingent and uncertain, often more·plausible upon paper than are actually realized? May they estimate the probable profits in collateral business, such as the loss of profits on a wood contract, or on a trade in cider in a distant state; the loss of profits which

ensued from breaking up a vast scheme to supply this state and the southwest with cider and oysters?" . . . "We cannot think that the legislature meant that so wide a latitude should be given as to constitute losses of profits in trade so speculative and remote, and so incapable of probable certainty, as may have been allowed in this case." Thus, even where the elements of damage have been enlarged by a special statutory enaction, mere probable or speculative expectations of profits in business are not to be taken into account, and *a fortiori* when there is no statute in regard to the elements of damages, should future profits of a new business not be allowed to be recovered; as before stated, the amount of past profits cannot be shown to enable the jury to conjecture what the future profits might be. See *Bierbach* v. *Goodyear Rubber Co.*, 41 Am. Rep. (Wis.) 19.

The measure of lessee's damages for the breach of a covenant in a lease is usually the difference between the market rental value of the premises, and the rent agreed to be paid for the same; damages for loss of probable profits to business in which the lessee may be engaged on the leased premises are too remote and speculative to be recovered in an action on a covenant in the lease. 24 Cyc. 922, *Dodds* v. *Hakes*, 21 N. E. 398, *supra*.

In the case of *Bromberg* v. *Eugenotto Construction Company*, 50 So. (Ala.) 314, it was held that the measure of damages of the lessee for deficiency in the dimensions of the storeroom, is the difference between the value of the lease, had the store been of the dimensions stipulated, and its actual value; but that evidence of the amount of lessor's sales in the old building, which existed before the building containing such storeroom was erected, and in a building on another street occupied because of the unsuitableness of the new store, and that the decrease resulting from the change of lo-

cation, was inadmissible as presenting a claim for remote and speculative damages.

It was the duty of the appellant to make reasonable exertions to reduce his loss, and if through negligence he allowed the damages to be unnecessarily enhanced, he must bear the increased loss. *Railroad Co.* v. *Ransdale*, 46 Miss. 468, *supra; Railroad Co.* v. *Echols*, 54 Miss. 264; *Birdsong* v. *Ellis*, 62 Miss. 418; *Lee* v. *Hampton*, 79 Miss. 321, 13 Cyc. 72 and 73. The record shows that appellant did make some effort to obtain other jobs, and did do some other work, but he made no effort to rent another shop in the village of Holly Ridge so that he could carry on his business; it was his duty to do this before he could hold appellee liable for damages, even for the difference in the price he was to pay for the rent of the shop and what he could have obtained another shop for.

REED, J., delivered the opinion of the court.

The appellee entered into a verbal contract with appellant during the first week in May, 1910, whereby appellee rented to appellant a blacksmith shop on the land of appellee at Holly Ridge, Miss., for a term from the first week in May, 1910, to the last day of April, 1911, at a monthly rental of ten dollars, and agreed to sell to appellant all of the blacksmith tools and materials then on hand in the shop, to be paid for in twelve equal installments, the value to be shown by an inventory and appraisement. It is also stated that appellee agreed to give appellant his custom and good will as a plantation owner. Appellant took possession of the shop and its contents, and the tools and materials were duly appraised. He remained in possession under the contract, doing his work as a blacksmith, until June 1, 1910, when appellee, without the consent of appellant, took possession thereof.

The suit by appellant is for his loss of profits and advantages from the breach of the contract and his being prevented from using the shop and continuing his work as a blacksmith therein.  He also seeks to recover on open account amounting to sixteen dollars and fifteen cents for work done for appellee and for two other parties at the instance and request of appellee.  Upon the trial of the case, appellant testified that just before he entered into the contract with appellee he had occupied a blacksmith shop on appellee's plantation about one and one-half miles from the Holly Ridge shop, under an agreement with appellee whereby the profits of said shop should be divided between them, and that such profits amounted to at least one hundred and thirty dollars per month; that when the contract was made in May appellee was in a position to know the probable profits per month of the shop, and that the revenues derived from the Holly Ridge shop from the first week in May until it was closed amounted to one hundred and twenty-three dollars and forty cents.

The trial judge would not permit appellant to testify as to the amount, according to his estimate, he would make out of the contract with appellee, had he been allowed to complete it, nor to testify that he could have made a profit of seventy-five dollars per month.  The testimony of appellant regarding the contract made with appellee prior to the first week in May, the profits he would have made out of the business which was being conducted at Holly Ridge shop, had he been permitted to complete the contract, and as to the amount made in the shop during the month of May, was excluded.  The court instructed the jury to find for appellee, except as to the sum of five dollars and fifteen cents, the amount of work claimed to have been done by appellant for appellee; this item being left to the discretion of the jury.

The question in this case is as to the correctness of the ruling of the trial court in excluding all testimony regarding the profits which could have been made by ap-

pellant out of the business at the Holly Ridge shop, and
in giving the instruction for appellee which limited his
liability to the item of five dollars and fifteen cents for
work done for him by appellant. The contention by ap-
pellee is that appellant is not entitled to any damages
consisting of profits to be derived from the use of the
shop and the conduct of his business therein to the end
of the contract term.

The principle touching the question of profits as an
element of damage is fairly well settled, but it must be
applied to each case arising. In the present instance the
party sustaining the loss is a blacksmith, who had al-
ready had business relations with appellee, a plantation
owner. The operation of such business transactions
proved profitable to both parties, and following these
transactions another business opportunity was offered
to him in the agreement by appellee, the plantation owner,
to rent him another blacksmith shop in the same neigh-
borhood, and to sell him upon easy terms the materials
and tools therein, and to assist him in his business by
giving him work to do. The amount made by the black-
smith in his shop consisted in a large measure of the
earnings from his own labor. The contract was entered
into and continued for a sufficient portion of the time to
show that appellant would derive a reasonable net
amount from his earnings and profits, and that the busi-
ness undertaking would inure to his advantage, and that
he would realize a fair revenue therefrom. At this point
it is shown that this promising business undertaking
was interrupted by the act of appellee, who prevented
appellant from continuing the occupancy of the shop and
completing his contract. In other words, the agreement
was broken by the act of appellee. Surely, under these
conditions, appellant is entitled to some damages for the
loss he has sustained in being deprived of the use of the
shop and the continuation of his business and work there-
in as a blacksmith. It also seems clear that he should
be permitted to present testimony in this case showing

all of the relevant facts which would aid a jury in fixing the damages which he has properly sustained. It is shown by his testimony that he endeavored to reduce the damages as far as possible in obtaining work and employment elsewhere, and it appears that the suit is for the difference between the amount which he would reasonably have made out of the Holly Ridge shop and the amount earned by him. It has been stated that, "if complete performance of a contract is prevented by either party, the other, who is willing and able to perform, shall be compensated in damages to the extent of making him whole." *Robertson* v. *Cloud,* 47 Miss. 208.

"The rule that damages which are uncertain or contingent cannot be recovered does not apply to an uncertainty as to the value of the benefit or gain to be derived from performance, but to an uncertainty or contingency as to whether any such gain or benefit would be derived at all." *Blagen* v. *Thompson,* 23 Or. 239, 31 Pac. 647, 18 L. R. A. 315. It is also stated that, "where a party sustains a loss by reason of a breach of a contract, he shall, so far as money can do it, be placed in the same situation with respect to damages as if the contract had been performed." *Messmore* v. *New York Shot & Lead Co.,* 40 N. Y. 422.

It is claimed in this case that profits were the very object of the contract. It will be noted that the profits in the present case would have largely consisted of the earnings by appellant in the shop by his labor as a blacksmith. "In many cases, profits are the very object of and inducement to the contract, and so understood by both parties, and then, therefore, they are not only recoverable, but constitute the true and exclusive measure of damages, to the extent to which they may be ascertained. Thus, where two parties enter into a contract by which one undertakes to do certain work for the other, and the latter refuses to permit the contract to be performed, there may be a recovery in damages of such an

amount as the former would have made out of fulfill-
ment." Am. & Eng. Ency. Law, vol. 8, page 622. "It.
has been held that, when the defendant refused to allow
the contract to be executed, the jury should allow the
plaintiffs as much as the contract would have benefited
them—profits or advantages which are the direct and im-
mediate fruits of the contract entered into between the
parties, and part and parcel of the contract itself, enter-
ing into and constituting a·portion of its very element,
something stipulated for, and the right to the enjoyment
of which is just as clear and plain as the fulfillment of
any other stipulation. They are presumed to have been
taken into consideration and deliberated upon before the
contract was made, and formed, perhaps, the only induce-
ment to the arrangement." *White* v. *Leatherberry,* 82
Miss. 103, 34 South. 358.

The earnings and profits which appellant expected to
make were the very objects and inducements to the con-
tract, and this was surely understood by both parties.
In such case, the appellant should have been permitted
to introduce testimony to show the amount of such earn-
ings and profits which he failed to receive by reason of
appellee's refusing to permit the contract to be per-.
formed. The jury should have been allowed to consider
the testimony offered. The trial court erred in not per-
mitting the appellant to testify concerning the damages
sustained by him, consisting of the amount of earnings
and profits which he could have made in the shop, if the
contract had been completed, and in excluding appel-.
lant's testimony on the same subject.

*Reversed and remanded.*