AMERICAN OIL CO. *v.* BYRD.*

(Division A.    Jan. 19, 1925.)

[102 So. 542.    No. 24422.]

MASTER AND SERVANT.  *Evidence held insufficient to determine damages for breach of contract of employment to sell goods on commission.*

Where the plaintiff in a suit for damages was employed by the defendant to open and conduct a new business for the sale of goods for the defendant at a stipulated commission on the sales made by the plaintiff, but the performance of the contract was never entered upon because of the refusal of the defendant to comply therewith, the evidence of persons using goods of the character to be sold under the contract that, other things being equal, they would have purchased from the plaintiff a portion of the goods desired by them, is insufficient by itself to support a finding either that the plaintiff would have sold any goods' at all under the contract or, in event he would have sold them, to show the amount thereof.  Consequently, it cannot be determined therefrom what commissions he would have earned under the contract.

---

*Headnote.    Master & Servant, 26 Cyc. p. 1013 (1926 Anno.).

APPEAL from circuit court of Pearl River county.
HON. J. Q. LANGSTON, Judge.

Action by T. Boyd Byrd against the American Oil Company.  Judgment for plaintiff, and defendant appeals.  Reversed and rendered.

*Hannah & Simrall* and *Parker & Shivers,* for appellant.

The peremptory instruction requested when the plaintiff had closed his case, should have been given, not merely because of the failure on the part of the plaintiff to show with that certainty required by the law, the terms and conditions of the alleged contract; but because the

testimony offered for the plaintiff, affirmatively and positively showed that the terms and conditions of the contract had not been agreed upon. The plaintiff sued for ten thousand dollars ($10,000) damages for loss of profits on a one-year contract—eight hundred thirty-three dollars ($833) a month. The plaintiff himself was unable to state at what time his contract was to commence; he admitted that it could be cancelled at any time either party was dissatisfied; he further admitted that the contract was to have a ninety-day cancellation clause in it. We, therefore, submit that the testimony of the plaintiff shows that no definite agreement was ever reached and entered into. The plaintiff, by his own testimony, positively shows that he did not have an agreement or understand as to when the contract would begin.

The damages sought to be recovered by the appellee in this case were occasioned by the loss of profits he would have made had the contract been carried out. Plaintiff in the court below failed to establish by any competent legal evidence with that degree of certainty required by the law, the damages he sustained on account of the loss of profits. The rule in our state with reference to loss of profits was laid down many years ago, and has since received the uniform approval of this court. *V. & M. R. R. Co.* v. *Ragsdale,* 46 Miss. 456.

The case at bar is based on a contract with reference to embarking in a new business, where, as said in the Ragsdale case, the profits that are supposed to arise from the business are dependent on many contingencies, such as skill, energy, the market, *et cetera.* There is testimony on behalf of the appellee in the record, admitted over the objection of the appellant, as to a volume or amount of business that the appellee would have done during the first year, but examination of the testimony shows that it is purely and solely the opinions or conclusions of the plaintiff and Mr. Lenoir, and falls within the condemnation of *Crystal Ice Co.* v. *Holliday,* 106 Miss. 714, 64 So. 658. The plaintiff, Byrd, and the chief

witness, Lenoir, were both permitted to testify over the objection of the defendant as to their opinion about the amount of business that the plaintiff would have done during the period of this contract, and, therefore, the profits that would have been realized.    This testimony does not offer any competent proof for damages, and is, therefore, insufficient on which to base a judgment; we further submit that the trial court erred in admitting this testimony over the objection of the appellant, and the case should be reversed, first, because of this incompetent testimony, and second, because it was prejudicial to the rights of the appellant to admit this testimony for the jury's consideration.    The principles announced in the Ragsdale case above cited, were approved by our court, in *Y. & M. V. R. R. Co.* v. *Consumer's Ice & Power Co.,* 109 Miss. 43, 67 So. 657.    The other testimony in the record with reference to the volume of business that the plaintiff would have enjoyed during the period of this contract, when carefully scrutinized shows that it weighs less than nothing.    It will be found, upon examination of the testimony given by the several witnesses that their promises in almost every case were of a most indefinite nature and were all conditioned on the "prices, quality and so forth," being equal.

It must be taken into account that the plaintiff would have been responsible for all debts, and for any other contingencies, that would have entered into the net profits of this business.    And here against the appellee is confronted by the uncertain and indefinite nature of the contract on which he relies.    In the first place, he does not know when the contract was to begin; in the next place, he says in one place, that it could be cancelled at any time on ninety days' notice, and in another place in his testimony, he says that it was to run from year to year unless one of the parties became dissatisfied.    Does it not, therefore, follow that the amount of his claims or alleged profits are too uncertain to admit of definite or certain calculation?    Of course, any expense incurred by

the appellee, the plaintiff in the court below in preparing to enter into this contract, are not recoverable as announced by our court in *Crystal Ice Co.* v. *Holliday, supra.*

The only other items of damage established by the testimony of the plaintiff are the expenses of bookkeeper and salesman, *et cetera.* These items are far more than taken care of by the twenty-five hundred dollars ($2500) profit made by the appellee, in the sale of the business that he established under the contract with the Texas Oil Company. The appellee showed by his own testimony that within a year's time he negotiated a contract similar to the one here in controversy with the Texas Oil Company, and it is nowhere shown that he might not have negotiated this contract immediately on the breach of the one here sued on, and thereby, completely absolved the appellant from any loss whatever.

This suit must stand or fall on the contract that the appellee, the plaintiff in the court below, made with the appellant on the night of November 20, 1922. Before he can maintain this action he must show that the minds of the contracting parties met and that they met on every essential detail of the contract. The plaintiff, himself, testifies that certain important provisions in the contract were never discussed until the day when they went to the attorney's office in the latter part of January. He is actually unable to state the date on which his contract was to begin. His contract was a verbal one and if it was not to be performed within the space of a year was unenforceable. According to his best understanding about the matter, the contract was to become effective only from the date it was written up, and therefore, falls within the statute of frauds. His damages are the loss of profits. They are wholly prospective and decidedly uncertain not only because of the volume of business, and of many other contingencies, but because the plaintiff does not know when his contract was to commence, and when it was to end, and because it is subject to cancella-

tion at the will of either of the parties. And last but not least, the defendant testifies that it never made or entered into any such contract.

Therefore, we respectfully submit that this case should be reversed and dismissed because of the numerous errors we have pointed out.

*Gex, Waller & Morse,* for appellee.

Appellant contends that there was no contract with anyone and that the peremptory instruction should have been given, because the term had never been agreed to. This is a question of fact, and the testimony bears out the existence of a contract.

The facts show that at another time Mr. Dunn, the general agent of the American Oil Company went to Amite, Louisiana, with Mr. Byrd, to look over that place as a possible location for the sale of the American Oil Company products and decided that the place was not right just then because of an oil fight in Louisiana. This was known to the officers in the American Oil Company; Mr. Dunn is, also, an officer in the corporation, part owner and director; Mr. Byrd had a right to believe that Mr. Dunn had the authority to make a contract; certainly the corporation and Mr. Dunn held out to the world that he had power to make the contract in question. Mr. Dunn released Mr. Byrd from his contract at Poplarville, Mississippi; he was the general manager; he was a part owner of the business; he was a director. Then, too the testimony of the appellee showed that he together with the general manager went to see the other directors, and owners of the corporation, who stated to him that whatever Mr. Dunn did was satisfactory. We think that this disposes of this question.

Appellant contends that damages if any were not proven by competent legal evidence. The appellant had prior to this time been in business with the appellee; their relations had been profitable to both parties; he

made contracts with the dealers at Amite; they all stated that if price and quality were equal they would have bought their requirements from Byrd; the American Oil Company agreed to meet competition as to price and quality; they showed what they bought for the time and based their estimates upon past records.

The case of *Beach* v. *Johnson,* 102 Miss. 419, founded, like this case, upon a verbal contract covers this case like a blanket. We will rest our case upon this authority.

*Hannah & Simrall* and *Parker & Shivers,* for appellant.

In our original brief on file in this case we discussed this question in the light of the rules laid down in *Vicksburg & Meridian Railroad Company* v. *Ragsdale,* 46 Miss. 456. This case has been so often quoted and approved by our supreme court that it has come to be the settled law of our state on the question of what damages may be recovered for the breach of a contract, and, as pointed out in our original brief, the damages which appellee seeks to recover in this case come squarely within the prohibition of the rule of the Ragsdale case that "if the contract is made with reference to embarking in a few business, the speculative profits which might be supposed to arise, but which were defeated because of a breach of the contract which delayed the business, cannot be looked to as an element of damages."

However, counsel for appellee seek to depart from this old rule and rest their case squarely on the case of *Beach* v. *Johnson,* 102 Miss. 419, 59 So. 800. But here again they pin their faith to a case which is not at all applicable to the facts of the case at bar, notwithstanding counsel's assertion that "it covers this case like a blanket." Let us look for a moment at the facts of *Beach* v. *Johnson.* Johnson entered into a verbal contract with Beach during the first week in May, 1910,

whereby Johnson rented to Beach a blacksmith shop on his land at Holly Ridge, Mississippi, for a term from the first week of May, 1910, until the last day of April, 1911, at a monthly rental of ten dollars per month, and agreed to sell Beach all of the blacksmith tools and, materials then on hand in the shop, the same to be paid for in twelve equal installments, the value to be shown by an inventory and appraisement.   Johnson, also, agreed to give Beach his custom and good will as a plantation owner.   Beach took possession under his contract of the shop and its contents, and the tools and materials were duly inventoried and appraised.   Beach remained in possession under the contract, doing his work as a blacksmith, until June 1, 1910, a period of one month, when Johnson breached the contract by taking possession of the shop and its contents.   Beach brought the suit to recover damages for the loss of the profits he would have made out of the contract, and damages for his being prevented from using the stop and continuing his work as a blacksmith.   On the trial of the case Beach testified that the profits he had actually made out of the shop during the month he operated it amounted to one hundred twenty three dollars and forty cents; and that just before he made this contract with Johnson, he had occupied another blacksmith shop on Johnson's plantation, about one and one-half miles from the Holly Ridge shop, under the same or a closely similar arrangement with Johnson, and that the profit to him from his operation of that shop amounted to an average of one hundred thirty dollars per month.

The difference between the two cases will at once be apparent.   In the instant case the appellee alleges a contract with appellant to engage in a new business, in a new location in a different state, and, without ever having performed any part of the contract (and part performance is essential to bring it within the rule of *Beach* v. *Johnson*), claims damages for the breach of same.   In the *Beach* v. *Johnson case*, Beach alleged the

breach of a contract which he had already partly performed and the destruction of an existing business. He had previously been engaged in the same business, on the same plantation, under the same contract with the same man, just before he entered into the new contract, and had, also, entered into the performance of his new contract by operating his new business for a period of practically one month. These facts and circumstances afford quite a different basis for the computation and estimation of the probable profits that might have accrued from the business, than the testimony adduced on behalf of the appellee in the case at bar.

Argued orally by *James Simrall,* for appellant.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment for damages for an alleged breach by the appellant of a contract alleged to have been made by it with the appellee. The appellant is a corporation engaged in the sale of gasoline, lubricating oil, and other petroleum products, and the appellee sued it for the breach of a contract which he claims and which we will assume for the sake of the argument, that he made with it to sell for it gasoline, lubricating oil, and other petroleum products at Amite City, La., for a stipulated commission on the quantity thereof sold by him. The appellee went to Amite City, and incurred certain expenses on the faith of his alleged contract, but the appellant declined to ship any products to him or otherwise to carry out the contract. Afterwards, and during the period for which the contract was to run, the appellee entered into a similar contract with a Texas oil company which contract he assigned to another, receiving therefor the sum of two thousand five hundred dollars, which the court below directed the jury to deduct from the amount of damages they might find that he had sustained because of the breach by the appellant of its

contract with him.    The damages claimed are the expenses alleged to have been incurred by appellee on the faith of his contract with the appellant and the commissions on the sale of petroleum products which he claims would have earned under the contract had the appellant complied therewith.    The sales agency which, under the contract, the appellant and the appellee would have established at Amite City, La., was a new one, and the evidence in support of the appellee's claim of the quantity of petroleum products which he would have sold had the contract been complied with was his own estimate thereof, and that there were several dealers in such products at Amite City who had promised to give him a portion of their business and who themselves testified and stated in effect that other things being equal, if the quality of the products were equal to that supplied by other dealers and the price therefor no greater than that charged by them, they would have given the appellee a portion of their business, some of them estimating what the amount thereof would have been.    All of this evidence may have been true, but *non constat* it does not appear therefrom with any sort of certainty that any sales whatever would have been made by the appellee—certainly the quantity of petroleum products he would have sold cannot be ascertained therefrom.    Any estimate thereof on this evidence must be the result of a mere guess; consequently, the appellee is not entitled to recover for this element of his alleged damage.    *Railroad* v. *Ragsdale,* 46 Miss. 458; *White* v. *Leatherberry,* 82 Miss. 103, 34 So. 358; *Crystal Springs Ice Co.* v. *Holliday,* 106 Miss. 714, 64 So. 658; *Railroad* v. *Consumers' Ice & Power Co.,* 109 Miss. 43, 67 So. 657; 3 Sutherland (3d Ed.), section 694, at page 2095.

The case of *Beach* v. *Johnson,* 102 Miss. 419, 59 So. 800, Ann. Cas. 1914D, 33, relied on by the appellee, is not in conflict herewith.    In that case damages were allowed for the breach of a contract for the carrying on of a blacksmith shop which had been run for about a month be-

fore the contract was broken, and in addition to the evidence of the business done for that month, it was shown that the parties to the contract had conducted a similar business immediately prior thereto in the immediate neighborhood of the place where the shop in question was located.

The business done under the contract sued on prior to its breach, and that under the former contract between the parties thereto, furnished a sufficiently definite basis for estimating the amount of business that would have been done under the contract sued on had it been carried out.

Assuming for the sake of the argument that the appellee is entitled to recover the expense incurred by him under the contract sued on, that element is more than covered by the two thousand five hundred dollars realized by him from the sale of his contract with the Texas oil company, which contract he could not, of course, have entered into without breaking the one here in question had it remained in force.

The judgment of the court below will be reversed, and a judgment will be rendered here for the appellant.

*Reversed, and judgment here.*