## ASH v. CHAS F. NOBLE OIL & GAS CO.

No. 14369—Opinion Filed Dec. 11, 1923.

(Syllabus.)

1. **Principal and Agent—Revocation of Agency—Agency Coupled With Interest —Right to Damages.**

Where an agency is uncoupled with an interest, it may be revoked by the principal at will. without liability for damages; but where it is for a fixed time, and contemplates on the part of the agent the expenditure of time and money in the performance of the duties of such agent provided for in the contract creating such agency, and such agent enters upon the performance of his duties, devotes much time to same, and incurs expense in pursuit of the object of the agency, the wrongful termination of such agency may be grounds for a cause of action in favor of the agent against the principal for such damages as the agent may have sustained by reason thereof.

2. **Contracts—Action for Breach—Damages —Anticipated Profits.**

A person damaged by breach of contract and thereby deprived of anticipated profits may recover such profits as damages where the same may be established with reasonable certainty and such profits were contemplated by the parties on the date of the execution of the breached contract.

3. **Same—Uncertainty of Damages.**

While it is the general rule that damages which are uncertain or contingent cannot be recovered for the breach of a contract, yet such rule does not apply as to the uncertainty of the amount, but only to the uncertainty as to whether any damage or benefit has resulted in the breach of the contract involved.

4. **Principal and Agent — Damages for Breach of Contract—Anticipated Profits of Agent.**

In an action by an agent against the principal to recover damages for breach of a written contract, wherein it was provided the agent was to have the exclusive sale of the products of the principal for fi [ve] years, and the agent was to sell the products at his own expense, and it appears from the evidence that the agent performed his duties under the contract for a period of 15 months in selling the products of his principal, earning net commissions on an average of $7,000 per month, and the principal at the expiration of 15 months of the contract notified the agent it would decline to recognize his authority to sell its products any longer. held, that the agent may maintain an action for the breach of the contract and recover such damages as he may establish. including anticipated profits; that the contract was not lacking in mutuality; that the trial court committed reversible error in excluding from the consideration of the jury the right of the agent to recover such damages as may have accrued to the agent by reason of the breach of the contract covering the unexpired term of the contract, and the action was not prematurely instituted.

5. **Same—Construction of Contract Terms —"Shall."**

"Shall", when used in a contract in connection with the duty to be performed or observed. is used in an imperative rather than a permissive sense, and imposes an obligation to discharge such duties.

6. **Same—Erroneous Instructions—Reversal.**

Record examined, and held, that the trial court committed reversible error in instructing the jury and that the cause be remanded for a new trial.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by Ben H. Ash against the Chas. F. Noble Oil & Gas Company, a corporation. to recover damages for breach of written contract. Judgment for plaintiff for $15,-000. Plaintiff brings error. Reversed and remanded, with directions.

W. D. Humphrey (Twyford & Smith and Humphrey & Campbell, of counsel), for plaintiff in error.

West, Sherman, Davidson & Moore and Ramsey, De Meules. Rosser & Martin, for defendant in error.

KENNAMER, J. Ben H. Ash, plaintiff, instituted this action in the district court of Oklahoma county against Chas. F. Noble Oil & Gas Company, a corporation, defendant, to recover damages for alleged breach of contract. The cause was tried to a jury on the 6th day of January, 1923, and a verdict returned in favor of the plaintiff in the sum of $15,000. Plaintiff filed a motion for a new trial, which was by the court overruled, and he prosecutes this appeal to reverse the judgment of the trial court

Parties appear here in the order they appeared in the trial court and will be referred to as plaintiff and defendant.

The plaintiff's causes of action, as pleaded in his petition, are for the alleged breach of written contract entered into by and between the plaintiff and defendant on the 1st day of March, 1921. The contract is in words and figures as follows:

"This Agreement, made and entered into, this 1st day of March, 1921, by and between Ben H. Ash, party of the first part, and the Chas. F. Noble Oil & Gas Co. of Tulsa, Oklahoma, as party of the second part, witnesseth:

"Whereas, the Chas. F. Noble Oil & Gas Co., now owns and operates casinghead gasoline plants for the manufacture of casinghead gasoline; also a refinery at Burkburnett for refining crude oil and thereby produces gasoline and other refined and by-products of crude oil for sale and distribution.

"Whereas, the said Ben H. Ash is engaged in the sale and distribution of crude oil, gasoline and other refined and by-products of crude oil for his customers on a commission basis.

"It is, therefore, understood and agreed, by and between the parties hereto, that the party of the first part shall have the sole exclusive right to sell the products from the plants of the party of the second part; and shall sell for and furnish shipping orders to the party of the second part for all of the products of its several plants, marketing the same at the highest price and to the best advantage obtainable, paying his own expenses in connection therewith.

"It is further understood and agreed, by and between the parties hereto, that the party of the first part shall receive as compensation for the sale above referred to, the following commission:

"One-half of one cent (½ of .01) per gallon on all gasoline, either straight run, blend, or casinghead.

"One-fourth of one cent (¼ of .01) per gallon on kerosene, which is sold for less than five cents (.05) per gallon.

"Three-eighths of one cent (⅜ of .01) per gallon when sold at five cents (.05) or more, per gallon.

"One-fourth of one cent (¼ of .01) per gallon for fuel oil and gas oil, for which settlements shall be made monthly.

"It is further understood and agreed by, and between the parties hereto, that the party of the first part hereby obligates himself, his successors and assigns, to sell the products from the plants of the party of the second part in preference to the product or products of any other customers, and when he is unable to sell and furnish shipping instructions on the products of the plants of the party of the second part, that he will not

sell or attempt to sell like products, or products of the same specifications for any other customers other than party of the second part.

"It is further understood and agreed, between the parties hereto, that the Chas. F. Noble Oil & Gas Co. shall pass on all credits, and assume all account receivable after having passed on and accepted same.

"This contract shall remain in full force and effect for a term of five (5) years from the date hereof, and shall extend to and be binding upon the heirs, successors or assigns of both parties hereto.

"(Sgd.)          Ben H. Ash,
                       "Party of First Part.

"(Sgd.)          Chas. F. Noble Oil & Gas Co.,
                       "Chas. F. Noble, Pres.
                       "Party of the Second Part."

The plaintiff pleaded two causes of action. The first cause of action was for $317,052.90 for anticipated profits he would have made had he been permitted to render his services as sales agent for the entire term of the contract. The second cause of action was for damages alleged to have accrued to the plaintiff by reason of certain sales of its products which the defendant made to parties in violation of the contract, and for commission on sales made by the plaintiff which the defendant had not paid to the plaintiff, in the total of $41,481.66.

The defendant's answer to the two separate causes of action pleaded by the plaintiff denied generally the allegations of the petition; and alleged that the contract was void for want of authority of Chas. F. Noble, as president of the Chas. F. Noble Oil & Gas Company, to execute it, and it was without consideration. That the contract was fraudulently entered into, as Chas. F. Noble, as president of the company, was to share in the profits which Ben H. Ash was to receive under the terms of the contract, and that the contract was a fraud upon the stockholders of said company. That the plaintiff had no individual rights under the contract, in that an oral contract was entered into on the date of the execution of said written contract. That the sale of the products of said company was to be made by corporation to be organized later for that purpose. That the plaintiff had violated the contract in not selling its products for the best and highest market prices obtainable.

The plaintiff filed a reply denying generally allegations of the defendant's answer. The questions presented by the plaintiff on this appeal, which were involved in the action under the pleadings, the evidence, and instructions of the court to the jury, and raised by his assignments of error, challenge the correctness of the court's instruction to the jury.

Before entering into a discussion of the

assignments of error, the material facts, as disclosed by the plaintiff's evidence, may be summarized as follows: After the execution of the contract by the parties, the plaintiff, Ben H. Ash, commenced his duties of selling the products of the defendant company, and continued to make sales of such products for a period of 15 months, and earned in net commissions about $7,000 per month, having sold large quantities of the defendant's products.

The evidence of the plaintiff tends to show that he had been a successful sales agent until the 26th day of June, 1922, when the defendant company wrote him a letter declining to recognize his authority to sell or dispose of its products, and notifying him in effect that it would decline to recognize the contract any longer. The trial court adopted the view, in submitting the cause to the jury, that the plaintiff could only recover commissions on sales which he might have earned up to and including the date on which the action was instituted, as the action to recover anticipated profits as damages for unexpired term of the contract could not be maintained and was prematurely instituted. Instruction No. 9 of the court was as follows:

"You are instructed that as to commissions on probable sales which may be made by the defendant company of its products after November 30, 1922, the plaintiff at this time cannot recover and his cause of action in so far as he seeks to recover for commissions which may be earned in the future is prematurely instituted."

Upon an examination of the record it is our conclusion that the trial court committed reversible error in submitting this case to the jury and that instruction No. 9 was error.

The rule is well settled that on the absolute refusal by one party to a contract to carry out the contract as obligated to do, such conduct in itself constitutes such a breach as to give an immediate right of action, and where such party unqualifiedly renounces his intention of further performance on his part, a cause of action at once arises in favor of the party entitled to performance, and he is entitled to recover such damages as will compensate him for the detriment caused by such breach. See Elliott on Contracts, vol. 3, sec. 2027; Ditzle Dry Goods Company v. Sanders, 44 Okla. 678, 146 Pac. 17; Roger v. Oklahoma City, 45 Okla. 269, 145 Pac. 357; Hollweg v. Schafer Brokerage Company, 197 Fed. 689; Canada, Atlantic & Plant S. S. Company v. Flanders, 165 Fed. 321.

The rule is, a party to a contract has but one cause of action for its breach, which is indivisible, and in an action thereon he is entitled to recover whatever damages he can prove within the rules of evidence. Wells v. National Life Association of Hartford, 99 Fed. 22.

The Supreme Court of the United States in the case of United States v. Behan, 110 U. S. 338, 28 L. Ed. 168, held:

"When a party injured by the stoppage of a contract elects to rescind it, then, it is true, he cannot recover any damages for a breach of the contract, either for outlay or for loss of profits; he recovers the value of his services actually performed as upon a quantum meruit. There is then no question of losses or profits. But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is, the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. If he chooses to go further and claims for the loss of anticipated profits he may do so, subject to the rules of law as to the character of profits which may be thus claimed."

In the case of Cloe v. Rogers, 31 Okla. 255, 121 Pac. 201, the second and third paragraphs of the syllabus are as follows:

"Where, after plaintiff has entered upon his duties, and expended time and money in carrying out a contract of agency for the sale of lots in a town-site addition, wherein his compensation and gain was to be derived from profits made in the venture, the defendant, without just cause, revokes the agency established, plaintiff is entitled to recover as damages the profits which he may be able to show he would have made under the contract, where the same are shown to have been in the contemplation of both parties, at the time of the making of the contract, as the natural and proximate consequence of its breach by the defendant, and in determining the same, and the amount recoverable, all facts relating to the subject-matter of the contract and concerning the execution thereof known to both parties, and all facts which would reasonably tend to make certain the amount of injury inflicted, are admissible; the jury, however, being instructed and cautioned in coming to its conclusion not to deal in speculative conjectures in drawing its deductions from the evidence offered."

We are clearly of the opinion that the plaintiff in this action was entitled to have the issues made under the pleadings and the evidence submitted to the jury, including the issue of his damages resulting from the breach of the contract for anticipated profits which he may have gained had the contract remained in force for the full five years.

Counsel for the defendant have argued with much ability that loss of anticipated profits may not be recovered as damages by reason of the uncertainty of such dam-

ages, and for that reason the trial court committed no error in not submitting such issue to the jury. This is a question which has resulted in much diversity of opinion in the authorities, but the great weight of modern authority appears to hold that the rule that damages which are uncertain or contingent cannot be recovered for breach of contract does not apply as to the uncertainty of the amount, but only to uncertainty as to whether any damage or benefit has resulted in the breach of the contract involved. Cloe v. Rogers, supra; Ft. Smith & Western Ry. Co. v. Williams, 30 Okla. 726 121 Pac. 275, 40 L. R. A. (N.S.) 494; Sparks v. Reliable Dayton Motor Car Co. (Kan.) 116 Pac. 363; Bredemeir et al. v. Pacific Supply Company (Ore.) 131 Pac. 312; Wilson v. Wernag, 10 Ann. Cas. (Pa.) 649; Beach v. Johnson, 102 Miss. 419, 59 South. 800, Ann. Cas. 1914D, 33, 17 C. J. sec. 113. This court in the case of Bishop-Babcock-Becker Company v. Estes Drug Company et al., 63 Okla. 117, 163 Pac. 276, in the fourth paragraph of the syllabus, held:

"A person damaged by the breach of the warranty of the fitness of an article of personal property for a particular purpose may recover anticipated profits, where the business of which plaintiff was deprived was contemplated, or can reasonably be presumed to have been contemplated, by the parties when the contract was made, and it is reasonably certain that gain or profit would have been derived therefrom, although the amount of such gain, to some extent, may be somewhat speculative and uncertain. It being apparent that some loss was suffered, it is then entirely proper to let the jury determine what the loss probably was from the best evidence the nature of the case affords."

In the case of Lazier Gas Engine Company v. Dubois, 130 Fed. 834, it was held:

"Where, in an action for breach of a contract to manufacture and sell certain machinery, plaintiff showed that the average profits made during the 16 months in which the contract was performed was $911 per month, a verdict allowing plaintiff profits at that rate during the 8 remaining months of the contract period after breach was not objectionable on the ground that such profits were remote and speculative."

In permitting a party to recover anticipatory profits for the breach of a contract the courts adopt the view that the profits made under the executed part of the contract, considered in connection with other evidence tending to establish that the only reason for the failure of such party to continue to gain such profits is the result of the party wrongfully breaching the contract and that such profits would be gained

in the ordinary course of things, and that where such profits may with reasonable certainty be established, are elements of damages to be submitted to the jury under proper instructions. Cloe v. Rogers, supra; Ft. Smith & Western Ry. Co. v. Williams, supra.

In view of the above authorities we are unable to conclude as a matter of law, where the evidence shows that the plaintiff had for 15 months performed his part of the contract, and as a result thereof acquired profits in the amount approximating $7,000 per month in selling such staple products as gasoline and the by-products of crude oil in a country where, as a matter of common knowledge, such business is continuing to grow by reason of the increased population and the general progress of the country resulting in an increased demand for such products, that it may be held that he would not have continued to make such profits in the ordinary course of things. It was in evidence that on the date plaintiff commenced to act as sales agent for the defendant, the defendant had on hand over 2,000,000 gallons of gasoline, which it had been unable to market, and that the plaintiff immediately disposed of all the supply and had conducted the sales business of the defendant company in such a manner that the board of directors of the defendant corporation passed resolutions commending him for the manner in which he had made sales for said company.

Counsel for the defendant contend that the contract entered into between the parties is void in that it is lacking in mutuality and that the agency created, although for a term of five years, was subject to revocation at any time by the defendant. This contention is urged upon the theory that the plaintiff had no interest in the products of the defendant, the subject of the contract, and, as the only compensation provided for was a commission on the products sold, the defendant impliedly had the authority and power to revoke the contract of agency at any time.

Counsel state that the plaintiff merely assented to sell the products for the defendant company, but assumed no binding obligation under the provision in the contract providing:

"It is therefore understood and agreed by and between the parties hereto, that the party of the first part shall have the sole and exclusive right to sell the products from the plants of the party of the second part; and shall sell for and furnish shipping orders to the party of the second part for all of the products of its several plants, marketing the same at the highest price and

to the best advantage obtainable, paying his own expenses in connection therewith"—that he would sell the products and that the phrase "shall sell for and furnish shipping orders to the party of the second part for all of the products of its several plants" was only an assent to do so. With this contention of counsel for the defendant we are unable to agree. An examination of the entire contract convinces us that the contract, the plaintiff agreed to sell to the in its terms, and is not subject to the construction contended for by counsel for the defendant. According to the terms of the contract, the plaintiff agreed to sell to the best advantage obtainable and furnish shipping orders for all products of the several plants of the defendant company, and the sale of such products was to be made at the expense of the plaintiff. His compensation and the amount of it depended upon the volume of business he was able to obtain for the company.

The word "shall," as used in the above paragraph of the contract, will be considered as having been used in its ordinary signification, which is mandatory and not permissive. "Shall," when used in connection with the duty to be observed or performed, is used in an imperative sense, and when a right or benefit depends upon giving it a mandatory meaning, it cannot be given a permissive meaning. Clark v. Patterson, 214 Ill. 539; Bay State St. Ry. Co. v. Woburn (Mass.) 122 N. E. 268.

The contract under consideration, briefly analyzed, provided that the Chas. F. Noble Oil & Gas Company owned and operated casinghead gasoline plants and a refinery for the refining of crude oil, producing gasoline and other refined by-products of crude oil for sale and distribution, and that Ash was engaged in the sale and distribution of such products. The oil company needed a salesman, and in consideration of the promise of Ash as such salesman to sell their products at his own expense, the company agreed to pay him, as compensation for his services. one-half of one cent per gallon on all gasoline, and other compensation as in the contract provided for the sale of its products as a commission. Ash agreed to sell the defendant company's products in preference to the products of any other company, and if unable to sell a customer the products of Chas. F. Noble Oil & Gas Company, that he would not sell like products of the same specification of another company. The contract was to remain in force five years from date and to be binding upon parties, their heirs, successors, and assigns.

In construing a contract it will be as-

sumed that the parties intended to make a binding and enforceable obligation, and a contract, where susceptible of two constructions, one valid and one invalid, will be held valid  Likewise, a contract should be construed in favor of mutuality. American Sugar Refining Company v. Newman Grocery Company, 284 Fed. 385; Knebel v. Rennie, 87 Okla. 136, 209 Pac. 414. Mutuality, as applied to a contract, means consideration. Section 5019, Comp. Stat. 1921, provides:

"Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

It is clear, under the plain provisions of the statute, the contract in question provided sufficient consideration and was not lacking mutuality. Jones v. Moncrief-Cook Company, 25 Okla. 856, 108 Pac. 403; Eastern R. R. Co. of Minn. v. Tuteur (Wis.) 105 N. W. 1067: Ward v. McKinley (Ore.) 191 Pac. 322.

The defendant company, in the instant case, accepted the services of the plaintiff, Ash, for 15 months, and had commended him for the manner in which he performed his part of the contract; therefore the defendant should not now be permitted to escape liability for its breach of the contract upon the ground that the contract was lacking in mutuality. American Refining Company v. Barkman, 261 Fed. 661.

The defendant company in the briefs filed herein is not attacking the contract upon the ground that Ash failed to comply with his obligations assumed under the contract. In this situation, the company will not be heard to say that it did not obligate itself to continue in business for the period of time covered by the contract. Under the solemn obligations assumed by the terms of the contract the defendant company agreed that the plaintiff might have the exclusive right to sell its products for five years from date. It is not contended, if it was permissible, that the company is without products; but, on the other hand, the evidence shows that it still continues in business and has the kind of products mentioned in the contract for sale, and had it sold out or transferred its business, the contract provides it is binding on its successors and assigns. It will not be presumed that the defendant employed an agent to sell its products for a period of five years in contemplation of only having business sufficient to keep such agent

employed for a few months of the time; but, having employed such an agent for a definite period of time, the court will indulge the presumption, in the event of a wrongful and arbitrary breach of the contract, that the services of the agent were not dispensed with for the reason of lack of business on the part of the company. Central Trust Company v. Chicago Auditorium Association, 240 U. S. 585, 60 L. Ed. 811.

The rule is that, where a party has voluntarily violated his contract and prevented the other party from performing, such party is estopped from asserting the inability of the other party to perform the contract as contemplated by the parties on the date of its execution and thereby obtaining the benefits that would be gained by such party in the ordinary course of things. If the contract had not been breached. Schiffman v. The Peerless Motor Car Company (Kan.) 110 Pac. 461.

We are of the opinion that the court committed reversible error in its instruction to the jury, and for that reason the cause must be reversed for a new trial.

It is so ordered.

JOHNSON, C. J., and COCHRAN, BRANSON, and HARRISON, JJ., concur.