### APPLIANCE DISTRIBUTORS, Inc. v. MERCURY ELECTRIC CORP.

No. 4529.

United States Court of Appeals, Tenth Circuit.

Feb. 27, 1953.

**652**

James E. Grigsby, Oklahoma City, Okl. (Jess L. Pullen, Oklahoma City, Okl., on the brief), for appellant.

Luther Bohanon, Oklahoma City, Okl. (Lynn Adams and Bert Barefoot, Jr., Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The Mercury Electric Corporation brought this action against Appliance Distributors, Inc.,[1] to recover damages for failure to accept delivery and pay for 1,200 electric awning fans pursuant to a written order. In its answer the defendant admitted the execution of the order and alleged that when the order was executed the defendant reserved the right to cancel the order at any time and that it was cancelled after it had received and paid for the fans delivered to it. In a cross-complaint the defendant alleged that the purchase of the fans was by sample, and that it had suffered damages because of the failure of the plaintiff to deliver fans which conformed to the sample. Upon trial to the jury a verdict was returned in favor of the plaintiff and judgment was entered thereon.

The plaintiff was engaged in the manufacture, distribution and sale of a combination fan and awning known as "Air Awn." In February, 1950, it exhibited a handmade model of this fan at the hardware show in Oklahoma City where it was viewed by representatives of the defendant. At the request of the defendant, the model was taken to Tulsa, Oklahoma, and displayed to agents of the defendant there. Later, dealers for the defendant exhibited the model in a hotel in Oklahoma City. Negotiations were entered into between the parties whereby the defendant was to become the exclusive dealer for these fans in Oklahoma. As a result of these negotia-

tions, the defendant, on February 17, 1950, executed a purchase order for 1200 fans at $47.28 each, to be delivered as follows: 100 on the date of the execution of the order, and 100 on the 1st and 15th of each month thereafter. It was provided that "this order is automatically cancelled if any other distributor is appointed in the State of Oklahoma, or if any other distributor ships merchandise to any dealer or contractors in the State of Oklahoma." This provision was modified by a subsequent letter from the plaintiff to the defendant and agreed to by the parties.

After the purchase order was signed, the plaintiff commenced the manufacture of the fans. The first shipments were not made as scheduled but one fan was delivered on February 28th and one on April 18th. A short time prior to April 20, 1950, the defendant wired the plaintiff requesting information as to when the fans would be shipped. 41 fans were shipped the date this telegram was received, 60 on April 24th, 175 on April 26th, and 85 on April 29th. These were accepted and paid for by the defendant. On May 1, the defendant notified the plaintiff to suspend shipment until further notice. Plaintiff completed the manufacture of the remainder of the 1,200 fans by July 1, 1950. On July 11, the defendant wired the plaintiff to "cancel all orders undelivered as of this date." Following receipt of this notification, the plaintiff wrote several letters to the defendant stating that the remaining fans which had been ordered were packed and ready for shipment and requested shipping instructions. No reply was received to these letters until September 14, 1950, when defendant's attorney wrote to the plaintiff stating that further delivery would be rejected because the goods were of inferior quality. The plaintiff sold the fans at a loss of $6,494. In addition, plaintiff claimed damages in the sum of $5,826.12 for expenses necessarily incurred because of the refusal of the defendant to accept delivery of the fans. The court submitted the question of damages to the jury upon the issue of whether the fans delivered conformed to

---

1. The parties will be referred to herein as in the court below.

the sample displayed to the defendant.[2] The defendant assigns as error the refusal of the court to direct a verdict for the defendant, and contends that the evidence was undisputed that the awning fans shipped to the defendant did not substantially conform to the sample which had been shown. Two fans were introduced in evidence. Witnesses for the defendant testified that one of these exhibits was the one shown at the hardware shows, and that the other was one which the plaintiff later shipped to the defendant. There was a substantial difference in the two fans but there was no evidence that the fan first exhibited was of inferior quality to that which was actually shipped to the defendant. Witnesses who were officers and representatives of the plaintiff testified that the plaintiff did not manufacture the fan claimed to be the sample; that they had never seen it before; and that they did not know where it came from. The testimony was in direct conflict with that of witnesses for the defendant, and presented a question for the jury. Baer Bros. Land & Cattle Co. v. Reed, 10 Cir., 197 F.2d 569.

■ Over objection by the plaintiff, the defendant was permitted to offer proof that at the time of the execution of the order it was agreed between the parties that the defendant should have the right to cancel the order at any time. The court, however, instructed the jury that it was not to consider this oral testimony, and stated that the written contract provided the conditions under which the order might be cancelled, and that neither party had the right to arbitrarily cancel the contract except as provided for in the contract. This was a correct statement of the law in Oklahoma. 15 Okl.St.Ann. § 137 provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of

the instrument." Wilson v. Plummer, 204 Okl. 157, 228 P.2d 176; Sinclair Refining Co. v. Roberts, 201 Okl. 358, 206 P.2d 193; National Mineral Co. v. A. L. Sterne Co., 198 Okl. 37, 174 P.2d 922; Warren v. Pulley, 193 Okl. 88, 141 P.2d 288; Annotation 70 A.L.R. 752.

■■ When the fans were not delivered to the defendant at the times provided for in the purchase order the defendant requested that they be shipped. Immediately thereafter, substantial numbers of the fans were delivered by the plaintiff and were accepted and paid for by the defendant without any objection. The court instructed the jury that the defendant, by requesting the shipment of the goods after the delivery dates provided for in the order and by later accepting them without objection, waived its right to object to the plaintiff's failure to deliver in accordance with the provisions of the order. The instruction was not erroneous. In Baer Bros. Land & Cattle Co. v. Reed, supra, 197 F.2d at pages 572–573, we said:

"It is true that appellees did not strictly comply with the terms of the contract in several respects, but appellant accepted delivery of the cattle with knowledge of the fact that they were not shipped from Big Spring, that two shipments were late, and that the average weight was in excess of 450 pounds. Being in possession of the cattle, appellant was afforded an opportunity to inspect them as to breed, quality and other respects in the light of the terms of the contract, but there is no specific proof that formal protest was made before October, 1948, approximately three months after delivery. When all of the grievances are considered, separately and together, they present no more than technical variances from the letter of the contract, and courts will not deny enforcement in the face of a showing of sub-

**2.** The court's instruction on this subject reads:

"The facts show that a sample fan was exhibited by plaintiff's agent to defendant and that the purchase order for the fans was executed by defendant upon the war-

ranty by plaintiff's agent that the fans would be according to the sample. If you find that the fans shipped by plaintiff to defendant did not substantially conform to the sample shown, then your verdict should be for the defendant."

654

stantial performance and in the absence of a detriment. Williston Contracts, Rev.Ed., Vol. 3, Sec. 805. Implicit in the jury's verdict is a finding of substantial performance of the contract. That finding is supported by competent evidence and it has binding effect here."

If there was a breach of the contract which would warrant rescission by the defendant, prompt action would be required of the defendant together with an offer to return to the plaintiff all the fans which had been received under the contract. 15 Okl.St.Ann. § 235; Harmon v. Phillips Petroleum Co., 196 Okl. 607, 167 P.2d 360; Commercial Finance Co. v. Patterson, 182 Okl. 411, 77 P.2d 1133; Smith v. Reinauer, 178 Okl. 4, 61 P.2d 1039; International Supply Co. v. Bryan & Emery, Inc., 164 Okl. 142, 23 P.2d 205; Luger Furniture Co. v. Street, 6 Okl. 312, 50 P. 125; Tucker v. Traylor Engineering & Mfg. Co., 10 Cir., 48 F.2d 783. This was not done by the defendant.

 Finally, defendant contends that the trial court's comments upon the evidence in the case were prejudicial because they were clearly one-sided and advocated the side of the plaintiff against the defendant. We have carefully examined these comments. They are in some instances somewhat favorable to the evidence of the plaintiff but in all they are judicial and dispassionate. The court was careful to instruct the jury that while it was proper for the trial judge to comment upon the testimony, "you are the sole and exclusive judges of the facts", and "if any one of you doesn't agree with my opinion about this case it is your duty to disregard it and decide this case under the evidence as you think proper." The trial judge took particular care to advise the jury that its function was to determine all the issues of fact. Comments upon evidence by the trial judge do not ordinarily constitute error where no rule of law has been incorrectly stated and all issues of fact have been submitted to the jury for its determination. The rule is correctly stated in Scritchfield v. Kennedy, 10 Cir., 103 F.2d 467, 471, where it was said:

"The trial judge is not limited to abstract instructions. It is within his province, whenever he reasonably thinks it to be necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of same which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted for their determination. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321. See, also, Weiderman v. United States, 8 Cir., 10 F.2d 745."

Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Lewis v. United States, 8 Cir., 8 F.2d 849; Rudd v. United States, 8 Cir., 173 F. 912.

Judgment is affirmed.