**C. ROBERT INGRAM, Inc., Appellant,**

v.

**The CHRYSLER CORPORATION, a corporation, Appellee.**

No. 5794.

United States Court of Appeals
Tenth Circuit.

June 13, 1958.

Rehearing Denied July 9, 1958.

Phil E. Daugherty, Oklahoma City, Okl. (Charles Perry Ames, and Ames, Daugherty, Bynum & Black, Oklahoma City, Okl., of counsel, were with him on the brief), for appellant.

Richard W. Fowler, Oklahoma City, Okl. (Keith Jenkins, Detroit, Mich., and Cochran, Dudley, Fowler, Rucks, Baker & Jopling, Oklahoma City, Okl., of counsel, were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellee-plaintiff, The Chrysler Corporation, sued appellant-defendant, C. Robert Ingram, Inc., on an open account. Ingram asserted six counterclaims. Trial was to a jury. At the conclusion of defendant Ingram's case, Chrysler moved for a directed verdict in the amount shown due by the open account less the sums claimed by Ingram on its first five counterclaims. As to the sixth counterclaim Chrysler urged that the evience was insufficient to sustain the claim. The motion was granted, judgment was entered for Chrysler in the sum of $40,-257.10, and the sixth counterclaim was dismissed.

We are concerned only with the dismissal of the sixth counterclaim. Therein Ingram sought $138,209.29 in damages because of the expenditure of that sum in the promotion of Chrysler Airtemp products under an alleged oral agreement whereby Ingram was to be Chrysler's wholesale distributor for such products in a defined area for a five-year period. Ingram asserted that Chrysler abandoned the contract and wrongfully "appropriated to itself" the benefit of the promotional expenditures of Ingram.

Chrysler denied the oral agreement, asserted that the parties entered into written agreements for stated annual periods, and relied on the termination of those agreements according to their specific provisions.

Prior to 1952, Ingram was a retail dealer in Chrysler Airtemp products and also engaged in a small wholesale operation in those products. In that year Chrysler representatives told Ingram of a prospective change in Chrysler's distribution organization and suggested that if Ingram would get out of its retail business and make certain adjustments in its operations, it would be made the wholesale distributor for the State of Oklahoma. After certain ill-defined temporary arrangements were entered into, Ingram, at considerable expense, made the changes required by Chrysler.

The president of Ingram testified that he was told by representatives of Chrysler that Chrysler was entering upon a long-range program and that the distributors would have five-year contracts. The times and places when such representations were made do not appear entirely clear from the record.

In September, 1953, a Chrysler representative presented to Ingram written contracts, each relating to a different kind of equipment. Some of the blank

spaces in these contracts, including those for the insertion of the termination date, had not been filled in at the time. The contracts were signed on behalf of Ingram and sent to the home office of Chrysler where the blanks were filled in and the contracts were executed by Chrysler. Executed originals were returned to and receipted for by Ingram. These contracts expressly provided for an automatic termination without notice on September 30, 1954.

At a distributors meeting in August or September, 1954, a complaint was made about the one-year term of the distributors' contracts. The president of Ingram testified that in reply a Chrysler official said that the one-year provision did not mean anything, did not apply to most of them, and was inserted to protect Chrysler against certain new distributors. A month or two later, 1954–1955 contracts with the termination dates left blank were signed on behalf of Ingram, sent to the Chrysler office, completed and executed by Chrysler, and returned to Ingram which receipted for them. Ingram complained of the omission of a certain Oklahoma county in these contracts and its requested revision to restore that county was made.

■■■■■ Ingram contends that Chrysler had no authority to insert the one-year termination date as that was contrary to the understanding of the parties.[1] The impropriety, if any, of such action by Chrysler was removed by the subsequent conduct of Ingram. Upon receipt of the completed and executed contracts in 1953 Ingram did not complain. Before the contracts were made in 1954, the president of Ingram had been present at a discussion of the one-year distributorship contracts. After Ingram received the 1954–1955 contract in completed form, it objected to the provision relating to its territory but said nothing about the termination date. Ingram is charged

with a knowledge of the provisions of the contracts as completed and executed by Chrysler.[2] It acquiesced therein and did not object until after the stated expiration date. Under the circumstances Ingram ratified the acts of Chrysler in filling in the blanks and it may not now complain.[3]

The 1953 and 1954 contracts contained provisions relating to "termination" and "only agreement" which are identical except for termination date. The 1954 contracts stated in these regards:

"17. Termination: This agreement shall terminate automatically without notice from either party at midnight September 30, 1955. * * Neither party shall be liable to the other for any damage of any kind resulting from such termination. * * *

"19. Only Agreement: This agreement cancels all prior agreements, if any, oral or written, between the parties and the parties hereto mutually release each other from all obligations and liabilities under or on account of such prior agreements except only the obligation of either party to pay to the other any existing indebtedness.

"No representative of either party has any authority to waive any of the provisions of this agreement or to modify or change any of its terms and no change, addition or erasure of any printed portion of this agreement (except filling in the spaces and lines) shall be valid and binding upon either party."

Upon the September 30, 1955, termination of the written contracts Chrysler refused to ship Ingram any products and refused to recognize Ingram as a distributor.

To avoid the written contracts Ingram relies upon the alleged oral contract for a

---

1. Cf. Perry v. Jenkins Music Co., 182 Okl. 51, 75 P.2d 1147, 1148.

2. Hayes v. Travelers Ins. Co., 10 Cir., 93 F.2d 568, 571, 125 A.L.R. 1053.

3. Clark v. Ellison, 180 Okl. 630, 71 P.2d 609, 614; Morton v. Central Nat. Bank of Okmulgee, 171 Okl. 494, 43 P.2d 394, 395; Swartz v. Bank of Haileyville, 169 Okl. 22, 35 P.2d 701, 703.

five-year distributorship. While the evidence of any such five-year contract is most meager, it is clear that if there ever was such a contract it was made before the execution of the written contracts for the 1954–1955 period.

15 O.S.A. § 137 provides:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

■ This statute and the decisions of the Oklahoma Supreme Court clearly established that an executory oral contract inconsistent with the terms of a written agreement pertaining to the same subject matter is unenforceable in the absence of fraud, accident or mistake.[4] This rule has been consistently followed and applied by this circuit in Oklahoma cases.[5]

■ The oral contract between Ingram and Chrysler, if there was one, preceded the written contracts for the 1954–55 period and, because its term had not ended, was executory rather than executed. There is no claim of accident, mistake or fraud. Accordingly, the written contracts control. They provided for automatic termination on a fixed date without notice and specifically stated that neither party is liable to the other for any damages of any kind resulting from such termination.

■ Ingram contends that Chrysler is liable for the expenditures of Ingram which inured to the benefit of Chrysler. There are cases in which such recovery is allowed when the term is indefinite[6] or when there is a fixed term contract and cancellation prior to the expiration of the term.[7] Such cases have no application here.

■ Counsel for Ingram insist that the oral representations of the Chrysler officials to Ingram that distributors would have five-year contracts, even though honestly made, constitute a constructive fraud on Ingram. Consideration of this question is foreclosed by failure of Ingram to plead fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

■ The natural sympathy which exists for a distributor such as Ingram who suffers from an apparently ruthless act of a manufacturer does not justify a court in either making a contract for the parties or in protecting either of them from a contract which they have made.[8] The written contracts between Chrysler and Ingram are clear and unambiguous. They must be enforced in accordance with their terms and those terms permit no recovery on Ingram's sixth counterclaim. The action of the trial court in directing a verdict was proper.

The judgment is affirmed.

4. Investors Royalty Co. v. Lewis, 185 Okl. 302, 91 P.2d 764, 766; Amerada Petroleum Corporation v. Tucker, 176 Okl. 289, 55 P.2d 54, 55; Seal Oil Co. v. Roberson, 175 Okl. 140, 51 P.2d 801, 805.

5. Brewer v. National Surety Corporation, 10 Cir., 169 F.2d 926, 928; Appliance Distributors v. Mercury Electric Corp., 10 Cir., 202 F.2d 651, 653; Jordan v. Hall-Miller Drilling Co., 10 Cir., 203 F. 2d 443, 446.

6. Cf. Erskine v. Chevrolet Motors Co., 185 N.C. 479, 117 S.E. 706, 32 A.L.R. 196.

7. Cf. Ash v. Chas. F. Noble Oil & Gas Co., 96 Okl. 211, 223 P. 175; Leisy Brewing Co. v. Schafer, 91 Okl. 105, 216 P. 109.

8. General Motors Corp. v. Keener Motors, 6 Cir., 194 F.2d 669, 677; Motor Car Supply Co. v. General Household Utilities Co., 4 Cir., 80 F.2d 167, 171.