**PARK ADDITION CO. v. BRYAN et al.**

No. 12730—Opinion Filed Sept. 9, 1924.

(Syllabus.)

1. **Corporations—Implied Authority of Officers and Agents—Estoppel.**

Where officers and agents of a corporation have been allowed to manage its affairs, their authority to represent the company may be implied from the manner in which they have been permitted by the directors to transact its business. Such corporation is bound by the apparent authority so conferred and will be estopped to deny such authority.

2. **Same—Receiving Benefits from Improvements—Validity of Mortgage to Third Person.**

Where third persons invest money in improving property with the knowledge and consent of such officers and agents, and by their inducement, and the benefits are received by the corporation, such corporation will be estopped to deny the validity of a mortgage taken by such third person to secure his investment.

3. **Same—Injunctional Relief Against Lessor Corporation.**

Under the foregoing circumstances, the estoppel will be limited to the security for the amount expended, and an injunction will not lie as against the corporation enjoining the forfeiture of its lease as against the lessee, not a party to the litigation. In such a case the mortgage will be declared valid, but the mortgagee left to its remedy by foreclosure.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by J. W. Bryan and M. E. Bryan, against Park Addition Company for injunction. Judgment for plaintiffs, and defendant brings error. Modified and affirmed.

Biddison & Campbell, for plaintiff in error.

Louis W. Pratt and James M. Springer, for defendants in error.

WARREN, J. On February 28, 1920, the Park Addition Company, a corporation, by E. F. Blanchard, president, under its corporate seal attested by P. W. Loss, secretary, entered into a certain lease contract, containing mutual obligations, including the leasing of the land, with Will T. Davis and I. D. Fleming covering a certain tract of land, a part of what was afterward known as Electric Park, adjacent to the city of Tulsa and lying on the north and west side of the Electric Union Railway Company's right of way.

The negotiations and arrangements with reference to this lease, as well as the second lease, were conducted with E. F. Blanchard, president of the Park Addition, and with I. F. Crowe the owner of a majority of the stock of the company. The stockholders of the Park Addition Company, with the exception of Blanchard, are largely the same as the Oklahoma Union Railway Company. The entire negotiations were conducted on the part of the company by Blanchard and Crowe, principally by Crowe. Crowe was also, during all the time, general manager of the Oklahoma Union Railway Company.

Under the provisions of this contract certain improvements, including a dance hall, were placed upon the premises, and the place was operated as an amusement park. Sometime prior to the 10th day of May, 1920, it become necessary or desirable in the opinion of the parties to enlarge the capacity of the concern, and the parties negotiated with J. W. Bryan, defendant in error, for the erection of further improvements consisting of larger dance halls or pavilions, confectionery, cold drink stands, etc. Under these later negotiations, participated in by all parties, particularly on the part of the company by Crowe, who had complete control, the lessees became indebted to Bryan in the sum of $18,000. To secure this indebtedness, on the 4th day of May, 1920, they executed a mortgage for $15,000 to J. W. Bryan, and on May 10, 1920, for $3,000. The first mortgage was filed June 7, 1920, and the second July 26, 1920. Prior to filing they were assigned to M. E. Bryan, defendant in error.

On June 29, 1920, a second contract was entered into by the Park Addition Company by E. F. Blanchard, its president, and the Park Amusement Company, by Will T. Davis, its president. The official seals of the respective secretaries, P. W. Loss and I. D. Fleming. Davis and Fleming, the lessees under the first lease, had organized the lessee company under the second.

Under the provisions of the second contract the provisions of the first were merged,

and the first contract surrendered; in other words, abrogated. Further, an option was given the lessees to lease the premises for an additional five years over and above the first lease. A much larger tract of ground was included, also additional ground south of the railroad right of way. This contract provided for additional improvements and additional obligations by both parties.

It was provided in the second contract that all buildings, structures, and permanent improvements at the expiration of the lease should become the property of first parties, and that second party agreed to keep premises free from liens and incumbrances.

It was further provided that upon breach of any of the covenants first parties could terminate lease upon ten days' written notice, at which time rights and liabilities of parties should be as if the five-year term had expired. Neither lease was acknowledged or recorded.

On November 19, 1920, the Park Addition Company served notice on the Park Amusement Company declaring the aforesaid lease contract and contract for maintenance of the Amusement Park dated June 29, 1920, terminated and at an end because of violation of the terms of the contract for the following reasons: First. Failure to pay annual rental of $1,000. Second. Mortgages of $18,000 to J. W. Bryan and M. E. Bryan. Third. Permitting mechanics' lien thereon. Fourth. Granting concessions without consent of lessor. Fifth. Failure to clean up brush and rocks as provided in contract.

On the serving of such notice or shortly thereafter suit was brought by J. W. Bryan and M. E. Bryan to enjoin the forfeiture of the lease, alleging the relation between the Oklahoma Union Railway Company and the Park Addition Company, alleging the execution and delivery of the aforesaid leases; that Blanchard and Crowe, representing lessor company, had induced the plaintiffs to advance and expend large sums of money aggregating the amount of the aforesaid mortages in the improvement of the premises; that the plaintiff had no knowledge of the provisions of forefeiture of said lease in the event liens or mortgages were placed thereon.

They make further allegations with respect to the Electric Park Amusement Company, of its expenditures and the acceptance of rentals from said company. They plead waiver of the conditions of the lease and estoppel on the part of the company to demand compliance therewith. They pray an injunction against any interference by the defendant with the Electric Park Amusement Company and for such other and further relief as may be properly decreed and awarded.

Defendant answers with a general denial, admits the execution of the lease and service of the notice to terminate. It also files a cross-petition, alleging the nonperformance of the conditions of the lease, particularly with reference to mortgages and liens, alleges the service of the notice to terminate, and prays a decree of court canceling the lease and removing the cloud from its title.

On a trial of the issues as so made, the court entered a decree, the pertinent part of which is as follows:

"It is therefore by the court considered, ordered, and adjudged that the defendant, the Park Addition Company, be and it is hereby perpetually enjoined from in any manner enforcing the alleged forfeiture of that certain lease executed by the Park Addition Company, to the Electric Park Amusement Company, and dated June 29th, 1920, and described in plaintiffs' petition herein for, or on account of, any of the matters or things by the said defendant claimed as grounds of forfeiture in its notice of forfeiture of said lease heretofore served upon the said Electric Park Amusement Company, so as to in any manner affect and decrease the value of the said lease and the improvements thereon as security to the said lease and the improvements thereon as security to the plaintiffs herein under the terms of the said mortgage set out in said plaintiffs' petition; the said leased premises being described as that portion of all that certain tract or parcel of ground shown on a map of Electric Park in the Park Addition to the town of Red Rock, county of Tulsa, and state of Oklahoma, lying on the north and west side of the right of way of the Oklahoma Union Railway Company."

The effect of the finding is to hold that the defendant is estopped to lessen the value of the security of the plaintiffs' mortgage, but is not estopped to take any action against the Electric Park Amusement Company so far as its rights are concerned.

This is a finding for the plaintiffs as to their allegations of conduct on the part of the defendant misleading the plaintiffs as to the terms of the lease. It is a holding that the defendant procured the plaintiffs to invest their money improving its land, or stood by and permitted them so to do, when it should have warned them to desist. There is sufficient testimony in the record to justify this finding, and it is not against the weight of the testimony. In an equity proceeding the judgment of the trial court will not be disturbed which is not against the weight of the evidence. White v. Kroeger,

77 Okla. 46, 186 Pac. 477; King v. Grant, 77 Okla. 105, 186 Pac. 960; Salmon v. Johnson, 78 Okla. 182, 189 Pac. 537; Jacobs v. Hill, 78 Okla. 38, 188 Pac. 661.

The corporation defendant acted through its president, Blanchard, and its majority stockholder, Crowe, and ratified their acts and accepted the benefits thereof. It is therefore estopped to deny their authority. The president, Blanchard, having the apparent authority, acted to the detriment of the plaintiffs. He was supported and, in fact, led by the majority stockholder, Crowe, and their acts were adopted by the company in a lease regularly executed. R. C. L. vol. 7, p. 623, vol. 10, p. 724.

While we agree with the trial court as to the finding that defendant is estopped to do anything to lessen the value of the security beyond the principal of the indebtedness with accrued interest, yet we do not think there is anything in the pleadings or proof that shows that the forfeiture of the lease in so far as the Electric Park Amusement Company is concerned will depreciate the value of the security to a point less than plaintiffs'. debt, interest and costs. On that point the judgment is somewhat indefinite. The Electric Park Amusement Company is not a party to the suit, and so far as we know is not complaining. The amounts advanced were not only in reliance on the lease as it existed, but in reliance on the new lease to be given when the improvements were completed.

There is not sufficient testimony in the record to justify a finding that the lessor company accepted rent from the Electric Park Amusement Company and thereby waived the assignment provision of the lease. The rentals alleged to have been paid consisted of improvements and it is not shown that the lessor knew they were to be so applied.

There is nothing in the decree of the trial court that bars the plaintiff in error from forfeiting the lease as against the Electric Park Amusement Company, though plaintiff in error assumes this to be true in his argument. The Electric Park Amusement Company might well have been made a party to this action by the trial court on its own motion. There could then have been a determination of its rights in this lease as well as those of the mortgagee and the lessor. This can still be done if it is desired. It does not appear from the testimony who at the time of the trial was operating the plant, whether the Amusement Company or the Bryans as mortgagees in possession. We would assume the former except for the conduct of the suit wherein the Amusement Company takes no part. All parties should desire a final and definite determination of all interests.

It is, therefore, ordered that the judgment of the trial court be affirmed in so far as it adjudges the validity of the mortgages as against the lessor, but modified to limit injunction against plaintiff in error to mortgagees in the enforcement of their mortgage.

JOHNSON, C. J., and BRANSON, HARRISON, and LYDICK, JJ., concur.