# Jessup & Moore Paper Co., Appellant, *v.* Bryant Paper Co.

*Contract—Performance—Reasonable time—Satisfaction of party —Good faith, not caprice—Mutuality—Consideration—Remedy— Sale—Price, method to determine—Maxim.*

1. Where a contract fails to specify the time within which a particular thing is to be done, a reasonable time is to be allowed for its performance.

2. Where a contract provides that a particular thing shall be done to the satisfaction of one of the parties, the power thus given must be exercised in good faith, and not as the result of mere caprice.

3. An agreement is not valid for want of mutuality merely because it is obligatory on one party and optional with the other.

4. The question of mutuality does not arise where a consideration appears for the promises of each party to a contract.

5. In order that a contract be mutual, it is not necessary that each should have precisely the same remedy, either in form, effect or extent, it suffices if both have the power of compelling performance of the promises respectively made.

6. A contract for the sale of goods is valid, even though it does not express the price to be paid by the vendee, if it does set forth a method by which the price can be determined.

*Statutes—Construction—Course of common law.*

7. The safest way is to interpret statutes as near as may be to the common law, and by the course it observed in cases of its own before the act.

*Sales—Contract—Executory—Act of May 19, 1915, P. L. 543— Acceptance.*

8. The fourth section of the Sales Act of May 19, 1915, P. L. 543, relates only to contracts which are wholly executory; if the

vendee accepts part of the goods contracted to be sold, and actually receives them, the section loses all applicability to the contract of sale.

Argued April 21, 1925. Appeal, No. 234, Jan. T., 1925, by plaintiff, from judgment of C. P. No. 5, Phila. Co., March T., 1922, No. 364, for defendant n. o. v., in case of Jessup & Moore Paper Co. v. Bryant Paper Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit for breach of contract. Before MARTIN, P. J., without a jury.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff. Judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was, inter alia, judgment for defendant n. o. v., quoting record.

*George Wharton Pepper,* with him *J. W. McWilliams* and *Charles S. Wesley,* for appellant.—The contract is based upon mutual consideration and reciprocal obligations: Paxtang Electric Co. v. Astrich, 17 Pa. Dist. R. 792; Franklin Sugar R. Co. v. Howell, 274 Pa. 190; York Metal and Alloys Co. v. Steel Co., 280 Pa. 585; Barnes v. Rea, 219 Pa. 279; Boyer v. Nesbitt, 227 Pa. 398.

Where there is any doubt, a contract should be construed as mutual and enforceable: Paxtang Electric Co. v. Astrich, 17 Pa. Dist. R. 792; Perry v. Payne, 217 Pa. 252; Van Horn v. Kemena, 281 Pa. 579.

The contract here in suit is enforceable and is not in contravention of section 4, Sales Act of 1915 (P. L. 543), Statute of Frauds: Mason-Heflin Coal Co. v. Currie, 270 Pa. 221; Mfg. L. & H. Co. v. Lamp, 269 Pa. 517; Sorber v. Masters, 264 Pa. 582; Title Guaranty & Trust

Co. v. Lippincott, 252 Pa. 112; Franklin Sugar Refining
Co. v. Howell, 274 Pa. 190.

*Thomas Raeburn White,* of *White, Parry & Maris,* for
appellee.—The terms of the contract although purport-
ing to bind the buyer to buy, do not bind the seller to sell:
Scott v. Wells, 6 W. & S. 357; Bigley v. Risher, 63 Pa.
152; Cold Blast T. Co. v. Bolt & Nut Co., 114 Fed. 77;
Willard v. U. S., 262 U. S. 489; Walker v. Mason, 272
Pa. 315; Hutchinson Baking Co. v. Marvel, 270 Pa. 378;
Penna. Lubricating Co. v. Wilhelm, 255 Pa. 390; Iron
City Laundry Co. v. Leyton, 55 Pa. Superior Ct. 93.

There was no "compromise agreement" which can sup-
port the present action: Barnes v. Rea, 219 Pa. 279;
Schroyer v. Thompson, 262 Pa. 282; York Metal & Al-
loys Co. v. Steel Co., 280 Pa. 585.

The contract is unenforceable under the statute of
frauds: Franklin Sugar R. Co. v. Howell, 274 Pa. 190;
Mfg. L. & H. Co. v. Lamp, 269 Pa. 517; Mason-Heflin
Coal Co. v. Currie, 270 Pa. 221.

OPINION BY MR. JUSTICE SIMPSON, May 11, 1925:

This case was tried before the learned president judge
of the court below, without a jury, under the provisions
of the Act of April 22, 1874, P. L. 109.  He reported in
favor of plaintiff but did not assess the damages, because
the parties had agreed this should not be done until
after the question of liability was finally determined.
The court in banc, in an opinion by the trial judge
himself, sustained certain exceptions to his rulings, and
entered judgment for defendant.  The facts are undis-
puted, and but two questions of law are raised on this
appeal by plaintiff from that judgment: 1st. Was the
contract in suit enforceable at common law?  2d. If it
was, does the 4th section of the Sales Act of May 19,
1915, P. L. 543, stand in the way of a recovery?

The contract was verbal, but was evidenced by a con-
firmatory letter from plaintiff and an endorsement there-

on by defendant. By it, plaintiff agreed to sell and defendant to buy "150 to 200 tons per month [of bleached soda pulp], during the year 1921," the method for fixing the price—out of which provisions the first of the contested questions arises,—being specified as follows: "On the last day of each month......the Jessup & Moore Paper Co., the sellers, will fix their price for their pulp for each [succeeding] calendar month. Upon receipt of notice of this price, if unsatisfactory to the Bryant Paper Co., the buyers shall then submit to the sellers a bona fide offer from a pulp manufacturer, admitted by both the sellers and buyers to be responsible, to furnish the [buyers] 150 to 200 tons of bleached soda pulp during the ensuing month, at a lower price. If the buyers do not submit such offer from a pulp manufacturer, the price named by the sellers shall be binding on both parties during the month involved. If, however, the buyers submit such offer, the sellers shall have the right to substitute the price so submitted instead of the price fixed by the sellers, and, if so substituted, both parties shall be bound thereby. If not accepted by the sellers, the buyers shall be at liberty to accept the proposal of such other pulp manufacturer for the ensuing month's supply, and shall not be bound, during that period, to accept deliveries from" the sellers.

As already stated, the entire controversy regarding the enforceability of the contract at common law, depends on the construction to be given to those clauses. Defendant claims that, under them, on the last day of each month, plaintiff could have specified any price whatever, fair or unfair, for the ensuing month, and this would have been binding on defendant, unless it could, by the next day, obtain and submit "a bona fide [counter] offer from a pulp manufacturer," which offer plaintiff could reject by simply saying the "pulp manufacturer [is not] admitted.......to be responsible." They point out, also, that, even though plaintiff admitted the offerer's responsibility, it laid the option of accepting

the cut price or refusing to do so; if it did neither, unless defendant submitted to the higher price of plaintiff, the latter was not required to furnish the pulp during the ensuing month. These facts, they assert, prove a lack of mutuality in the obligation of the contract, which was, therefore, unenforceable in so far as it was executory. On the other hand, plaintiff asserts the contract was valid and binding, that defendant's cancellation of it was wrongful, and hence sought to recover in this suit for the loss thus occasioned.

The last day of the month was doubtless specified as the time when plaintiff should initially state the price for the ensuing month, in order that, when the market was unsettled, all the circumstances which might affect the price during that period, would be known to both parties, so far as they could possibly be ascertained in advance; but the contract does not require that the counter-offer, from a responsible pulp manufacturer, must be submitted on the day following the receipt of notice of the price named by plaintiff. No time for its submission is fixed; consequently a reasonable time is allowed, and, under the circumstances here appearing, this would mean not earlier than the time when defendant was reasonably required to give shipping instructions to plaintiff. The parties themselves appear to have viewed the contract in that way. On several occasions plaintiff delayed shipments until the last week of the month, in which the pulp was to be delivered, in order that defendant might obtain counter-bids for that month's deliveries; and, on July 30, 1921, reduced the charge for July because of a better price defendant obtained from another manufacturer, as set forth in its letter of the previous day.

Nor does the contract, when properly construed, give to plaintiff the arbitrary power to fix any price it pleases, or to capriciously claim that the manufacturer, who should give a counter-bid, was not responsible. As to the latter point, the applicable rule is laid down in

Singerly v. Thayer, 108 Pa. 291, and consistently followed ever since, to at least as late as Thaler Bros. v. Greisser Construction Co., 229 Pa. 512, 518. Under it the right given to one party to refuse to act because of dissatisfaction must be exercised in good faith, and not expressed as the result of mere caprice. Every contract is to be construed reasonably, and any action by either party, not warranted by its terms, would give to the other a right either of cancellation or suit. Nowhere in the voluminous correspondence appearing in this record, is there even the slightest suggestion of arbitrary or capricious action on the part of plaintiff. A fair difference of opinion may always exist as to what is the lowest price for which an article can be obtained at a given time; hence the right to get counter-bids from other manufacturers was doubtless inserted in order to provide a method of adjustment, should such difference appear. Moreover, while the contract does not so state, and hence it cannot be considered a binding term thereof, plaintiff wrote to defendant,—when the latter sought to postpone deliveries because of the unsatisfactory condition of the trade,—that "we will not at any time ask you to pay a higher price for the pulp than we are charging our own mill [which also manufactures paper therefrom], or our other customers." So far as appears, or is claimed on this record, plaintiff faithfully kept that promise.

It is suggested by appellee that the contract lacks mutuality, because, although plaintiff, generally speaking, was required to deliver 150 tons per month, it had the option to deliver 50 tons additional, which, if the contract is effective, defendant had no option but to accept. Carried to its logical conclusion, the argument based on this objection would destroy all options. We said, however, in York Metal & Alloys Co. v. Cyclops Steel Co., 280 Pa. 585, 590: "When there is an agreement founded on a consideration, it is not invalid for want of mutuality because one party has an option while the other

has not, or, in other words, because it is obligatory on one and optional with the other. Hence, want of mutuality cannot be set up as a defense by the party who has received the benefit simply because it was left optional with the other party as to whether he would enforce his right: 13 C. J. 336. In order that a contract be mutual, it is not necessary that each should have precisely the same remedy, either in form, effect or extent. It is sufficient if both have the power of compelling performance of the promises respectively made: Phila. Ball Club v. Lajoie, 202 Pa. 210; Barnes v. Rea, 219 Pa. 279; Boyer v. Nesbitt, 227 Pa. 398; Corbet v. Fuel Supply Co., 21 Pa. Superior Ct. 80." Moreover, by a compromise agreement made by the parties on March 22, 1921,—up to which time plaintiff had never accepted even 150 tons per month,—200 tons per month was fixed as the basis for settlement and delivery, covering both the past and the future.

The above quotation also disposes of the further reason given by defendant as showing that the contract lacked mutuality, growing out of the fact that if it obtained a lower bid from another manufacturer, plaintiff had the option of reducing its price accordingly, or refusing so to do. This provision was inserted for defendant's benefit; thereby it, in turn, if plaintiff refused to reduce its price, had the option of requiring the latter to continue deliveries at the original price, or itself of accepting deliveries from the lower bidder; hence there is no lack of mutuality, but rather a lack of generosity in citing the provision as a reason for wholly defeating the contract. In any event, however, it has not the effect suggested. Where a consideration appears elsewhere in a contract, the question of mutuality does not arise. In addition to what is said above, we may add, in the language of Meurer Steel Barrel Co. v. Martin, 1 Fed. R. (2d series) 687-8. "The terms 'consideration' and 'mutuality of obligation' are sometimes confused. Consideration is essential; mutuality of obligation is not,

unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, mutual promises must be binding on both parties. But where there is any other consideration for the contract, mutuality of obligation is not essential." In the present instance, there was ample consideration in the provision which gave defendant the right to compel plaintiff to deliver at least 150 tons per month during the entire year, and in the postponement of deliveries made by the agreement of March 22, 1921, to which reference has already been made.

Construed as above set forth, the contract under consideration is valid and binding. A definite standard is set for determining the price, and hence the maxim id certum est quod certum reddi potest is applicable, as, in effect, is shown by Van Horn v. Kemena, 281 Pa. 579. Certain it is, that fixing the contract price by the highest, lowest or prevailing price at a particular time and place, would result in a binding agreement: Franklin Sugar Refining Co. v. Howell, 274 Pa. 190, 198. In substance the present contract gave defendant the opportunity to get the 200 tons per month, whenever it could obtain the best terms, whether from plaintiff or some other pulp manufacturer, plaintiff always being bound to deliver that quantity, if defendant so required. This gave the latter a great advantage, for such pulp was made by many manufacturers in numerous places, and, hence, for obtaining it, there was always a reasonably definite market. It might well be that the necessities of some, or the desire to keep their mills running, which otherwise might have to be closed down, would compel them to sell at a lower rate than would plaintiff, or others not so hampered. If so, defendant could get the benefit of the opportunity thus arising. We do not wish to be under-

stood as saying that our conclusion would be different, if the commodity was of such a character that it could be obtained from but a few or only one party for, under such circumstances, the purchaser might be held to the knowledge that he made his agreement in the light of that fact; but only that this possible objection does not appear in the instant case. Here, plaintiff in effect says: "I will sell pulp to you each month, at the price which I will specify; if it is higher than the best price you can obtain elsewhere, I will either meet that price or you may fill your requirements from the lower bidder thus obtained"; and defendant says "I will buy from you on those terms." We see nothing illegal or unenforceable in such an agreement. It is not an unusual mercantile contract, was especially fair to defendant, which was bargaining for what it believed would be its requirements for the ensuing year, and, hence, as defendant was not left to the mercy of plaintiff, we need not consider the numerous cases, cited by defendant, which deal with the results growing out of that character of contract.

It is very clear, also, that the 4th section of the Sales Act does not stand in the way of plaintiff's recovery. In interpreting it, nothing is to be added by intendment; a change from the common law cannot be presumed; it must appear to have been meant, or it will be held not to have been made. In Com. v. Burrell, 7 Pa. 34, 35, quoted and approved in Kates's Est., 282 Pa. 417, we said that "the safest way is to interpret statutes as near as may be to the common law, and by the course it observed in cases of its own, before the act." With this rule in mind, the interpretation of section 4, so far as it relates to the instant case, is not difficult. It says: "A contract to sell or a sale of any goods......of the value of $500 or upwards shall not be enforceable by action unless the buyer shall accept part of the goods......so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part pay-

ment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." It will be noticed that these requirements are not cumulative, but disjunctive; hence, where any one of the specified alternatives appears, the contract is as enforceable as it was before the act. It will be observed also that the statute does not discriminate between divisible and indivisible contracts, or between those providing for bulk or installment deliveries, nor does it make any other distinction regarding the character of the contract; hence it must be held to apply to any and every class of contracts. It follows that whenever, under any contract, "the buyer shall accept part of the goods......so contracted to be sold or sold, and actually receive the same," the statute loses all applicability to the "contract to sell," by virtue of which the partial deliveries were made; in other words, this section of the statute relates only to contracts which are wholly executory.

It is a matter of no consequence that the present agreement also provides that "Each shipment under this contract is to be considered as a separate contract, and default on one or more shipments is not to invalidate the rest of the contract." The word "contract" is used three times in that clause; on two of the occasions it refers to the *general* contract; in the other it refers to the *individual shipment,* which was not to be a separate contract, but only to be "considered" as if it were such, for the purpose of determining the effect of a default, and for that purpose only. In the present instance, it is admitted that a number of deliveries, aggregating 51.6 tons, were made by plaintiff and received and paid for by defendant, and hence since there was but one "contract to sell" in which defendant, as the "buyer [did] accept part of the goods......and actually receive the same," the 4th section of the Sales Act thereby ceased to have any further applicability to the contract.

The judgment of the court below is reversed, judgment is entered for plaintiff, and the record is remitted that the damages may be assessed in accordance with the agreement of submission.