ALEX N. KAZOS, appellant, v. GINSBERG'S, INC., appellee.

No. 47541.

(Reported in 41 N.W. 2d 30)

FEBRUARY 7, 1950.

M. E. Rawlings and Crary, Munger & Crary, all of Sioux City, for appellant.

Sifford & Wadden and Sam G. Pickus, all of Sioux City, for appellee.

WENNERSTRUM, J.—Alex N. Kazos, plaintiff, sought in an action in equity to compel the removal of a loading dock which Ginsberg's, Inc., had constructed in a private alley to the rear of the property owned by plaintiff. The trial court refused to issue a mandatory injunction directing its removal. The plaintiff has appealed.

The northwest quarter of Block 23, East Addition Sioux City, Iowa, is located in the main business district of the city. Nebraska Street is to the west of it and Fourth Street is to the north. This property was platted and divided into lots one, two and three facing Nebraska Street. In later sales of Lots 1 and 2 they were divided and improvements were made with the front-

age facing to the north on Fourth Street. At the time of the signing of the agreements which have resulted in the litigation here involved Alex Kazos, Trustee, was the owner of the east two-sevenths (2/7) of Lots one (1) and two (2). Title was later taken in the name of Alex N. Kazos. Thomas C. and Minnie A. Bolton were the owners of the middle three-sevenths (3/7) and Gladys B. Asprey, Harold L. Brown and Larned F. Brown held title to the west two-sevenths (2/7) of these lots. The Sioux City Crockery Company was the owner of lot three (3). The front of this lot faced on Nebraska Street to the west.

The frontage of the quarter block facing on Fourth Street is shown to be as follows: The first 65 feet to the east of the corner is occupied by Weatherwax, Inc., operators of a clothing store. This is the property owned by Gladys B. Asprey, Harold L. Brown and Larned F. Brown. The next 42½ feet to the east is occupied by Ginsberg's, Inc., who have a retail furniture store. This property is owned by Thomas C. and Minnie A. Bolton. The next 42½ feet to the east is owned by Alex N. Kazos and he operates a restaurant on a part of it. A portion of the front part of the Kazos property adjacent to a public alley to the west is rented for a jewelry store. The business properties facing on Fourth Street have a depth of 90 feet. A private alleyway 10 feet wide off the south side of Lot 2 was to the rear of the properties facing on Fourth Street prior to changes made subsequent to the agreements in controversy. It extended 150 feet west from Nebraska Street to the public alley to the east of the Kazos property. The Crockery Company property, Lot 3, is to the south of the private alleyway, has a frontage of 50 feet on Nebraska Street and extends 150 feet to the public alley on the west.

Because of unsanitary conditions that had developed in the private alleyway, a desire to improve the physical appearance of the Weatherwax store on Nebraska Street and to give additional space for the clothing and furniture stores an agreement was entered into by the interested parties for the closing of this alleyway. It is, in part, as follows:

"This agreement made and entered into on this 30th day of September, 1946, by and between the parties named herein, witnesseth:

"\* \* \*

"Whereas, all of the parties to this agreement desire to close the private alley to the south of Lot two (2) aforesaid pursuant to the terms and conditions hereinafter set forth.

"Now, therefore, in consideration of One Dollar ($1.00) and other good and valuable considerations, and of the mutual promises and agreements herein contained, the receipt whereof is hereby acknowledged by one party from the other, it is understood and agreed that the said Weatherwax, Inc., and Ginsberg's, Inc., shall have the right to enclose the said private alley by constructing walls at such places as they shall agree upon, including the entrance to said private alley on Nebraska Street and at any other points in said private alley to the east thereof, and said Alex Kazos, Trustee, agrees that Ginsberg's, Inc., shall have the right to build a loading platform in the said private alley on the south ten (10) feet of the East two-sevenths (2/7) of Lot two (2) extending to a point which shall be 10 feet west of the north and south alley, which alley is located immediately east of said East two-sevenths (2/7) of Lot two (2).

"It is understood and agreed that Weatherwax, Inc., and Ginsberg's, Inc., shall construct such walls and other changes at their own expense and shall save the property owners harmless from any and all claims of every kind and character, whether to persons, or property, arising out of the said construction and maintenance of said improvements during the entire period within which this agreement shall remain in force and effect.

"It is understood and agreed between all the parties hereto that this agreement shall be cancelled upon the expiration of the lease held by Weatherwax, Inc., a corporation, or Ginsberg's, Inc., a corporation, or any extensions of either of said leases, and that the expiration date of this agreement shall be for the shortest period of time that either of said leases or extensions shall continue.

"It is further understood and agreed that if and when this agreement shall terminate as hereinabove provided for, that all walls and other obstructions to the use of the private alley shall be removed by Ginsberg's, Inc., and Weatherwax, Inc., at their own expense, and the private alley shall be restored to the same condition in which it now is, and all rights now existing by virtue

of the previous reservation with respect to the strip of land ten (10) feet wide to the south of Lot two (2) shall remain and continue in full force and effect as though no obstructions to said private alley had been made as herein provided for.

"The Soelberg [Crockery Company] interests agree that the wall of its building to the south of said private alley may be used for the purpose of attaching thereto any walls constructed to close said private alley.

"This agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the respective parties hereto.

"* * *"

. The foregoing agreement is referred to in the record as Exhibit F.

On the same date there was entered into in writing what was termed a "Supplemental Agreement." It is claimed to have been entered into contemporaneously with the general agreement. It is in part as follows:

"This supplemental agreement made and entered into on this 30th day of September, 1946, by and between Ginsberg's, Inc., first party, and Alex Kazos, Trustee, second party, Witnesseth:

"Whereas said parties, together with Weatherwax, Inc., Sioux City Crockery Company, and the Brown interests, have on this date entered into an agreement for the closing of a private alley to the south of Lots One (1) and Two (2) in Block Twenty-three (23) Sioux City East Addition, an addition to Sioux City, Woodbury County, Iowa, and in said agreement first party is given the right to build a loading platform in the said private alley, extending onto the east two-sevenths of said Lots One (1) and Two (2) aforesaid,

"Now, therefore, this agreement is entered into between said parties contemporaneously with, and as a part of the agreement hereinabove referred to, and it is agreed by said parties as follows:

"* * *

"5. Said first party shall remove the loading dock at any time that second party shall request such removal. ·

"6. In connection with all of the obligations resting upon

the said first party incident to the above and foregoing, and incident to the closing of the alley, said first party agrees to save the said second party harmless on account of the construction and maintenance of the said dock during the entire period of its existence.

"7.   This agreement shall be binding upon the successors and assigns of the respective parties hereto.

"*   *   *"

This supplemental agreement is referred to in the record as Exhibit G.

Pursuant to these agreements the alley was closed. The outside of the building occupied by Weatherwax was extended to include the alleyway and floor space for the store was thereby extended. The property occupied by Ginsberg's, Inc., was also extended to include the alley. By reason of the agreements they built a loading platform 32½ feet long at the back of the Kazos property. It opened into the extended portion of the building occupied by Ginsberg's, Inc. It extended to within 10 feet of the public alleyway to the east. It was built to make easier the loading or unloading of furniture into the building occupied by the appellee. When trucks were unloading at the end of the platform they protruded out into the public alleyway. It is the contention of the appellant, Kazos, that he was prevented from making use of an entrance opening into the private alleyway and was required to make a doorway opening on the public alley to the east.

On June 4, 1948, apparently under the provisions of Exhibit G, Kazos, the then owner, notified Ginsberg's, Inc., to remove the platform within ten days from the receipt of the notice and to restore the alley to the condition existing prior to the erection of the loading dock and to discontinue using the alley in an improper manner. Ginsberg's, Inc., failed to comply with the notice and demands. Kazos then brought the action now before us for review.

Ginsberg's, Inc., sought by motion to include the other parties to Exhibit F as defendants. This motion was overruled. Ginsberg's, Inc., then filed its answer. It denied the allegations of the appellant's petition; admitted the execution of Exhibits F and G; asserted that appellant had no legal rights by virtue

of Exhibit G contrary to the provisions of Exhibit F; that Exhibit G was without consideration and was not binding upon the appellee so as to require the removal of the loading dock; that there was no mutuality between appellant and appellee in Exhibit G, and that it could not and should not modify Exhibit F.

After trial upon the issues presented the court filed written findings of fact and conclusions of law, the material portions of which stated:

"That Exhibits F and G were contemporaneous and signed by the affected parties at the same time.

"That the parties to this action at the time of the signing of the agreements intended the provisions regarding termination to be controlled by the original agreement and not by the supplemental agreement.

"That the provisions with regard to termination as set out in the two writings are wholly repugnant to each other and cannot be reconciled; that to force removal of the dock at this time would be contrary to the true intentions of the parties at the time of the signing, and such required removal would be unfair and inequitable to defendant."

I. As stated in the supplemental agreement the court found that it and the original agreement were signed contemporaneously. In considering the supplemental agreement we should keep in mind that improvements were made by Weatherwax. Inc., and Ginsberg's, Inc., in extending their stores to the rear, thereby increasing the floor space. As far as Kazos was concerned his part of the agreement merely permitted the other parties to close the alleyway and to make the improvements they desired. Because of the contemporaneous signing of the agreements it is quite apparent that Kazos entered into Exhibit F because of the conditions and agreements incorporated in the supplemental agreement, Exhibit G. It is our conclusion that there was an ample and valid consideration for the separate agreement between Ginsberg's, Inc., and Kazos. To constitute a consideration. it is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made, as consideration for the promise made to him. First State Bank

v. Williams, 143 Iowa 177, 180, 181, 121 N.W. 702, 23 L. R. A., N. S., 1234, 136 Am. St. Rep. 759, and cases cited; Marshalltown Stone Co. v. Des Moines Brick Mfg. Co., 114 Iowa 574, 575, 87 N.W. 496. To permit the building of the loading platform Kazos agreed that it might be built on the part of the alleyway owned by him in consideration of the agreement on the part of Ginsberg's, Inc., to remove it whenever he desired. Kazos would gain nothing from the closing of the alleyway other than the possible prevention of unsanitary conditions. He apparently had no plans for improvements as did the owners of the other two properties. In the instant case it is apparent to us that there was sufficient consideration for this supplemental agreement.

II.    It is our belief that the two agreements are not incompatible. It is true that the loading dock was mentioned in the general agreement, Exhibit F, but even in that agreement it is apparent that the arrangement between Ginsberg's, Inc., and Kazos pertained only to these two parties. The record shows definitely that the supplemental agreement was prepared by the attorney for Ginsberg's, Inc., and for the purpose of satisfying Kazos. The appellant, Kazos, testified: "I would not have signed Exhibit 'F' without Exhibit 'G'." Ed Baron, an attorney in Sioux City, testified pertaining to these two agreements "* * * I represented Ginsberg's, Inc., in that transaction, nobody else. * * *"

Even if these two instruments are construed together as was the holding in Omaha Bank v. Novotny, 236 Iowa 54, 59, 17 N.W. 2d 836, it is our conclusion that the supplemental agreement is not repugnant to the general agreement. This supplemental agreement merely gives justification for Kazos signing the general agreement. It is our conclusion that the appellant would not sign Exhibit F and permit the virtual closing of the entire alleyway merely to satisfy Weatherwax, Inc., and Ginsberg's, Inc., without some protection on his part. It should be kept in mind that Kazos was paid nothing by Ginsberg's, Inc., for the use of the alleyway. For the several reasons stated we hold that the supplemental agreement was not incompatible and repugnant to the general agreement.

III.    We are satisfied that the equities are with the appellant and that a mandatory injunction should issue to require

the removal of the loading dock in the alleyway but on appellant's property. He should not be prevented from having access to his property in a manner he desires, especially when in the supplemental agreement he reserved the right to have the loading dock removed whenever he desired. This is particularly true when we consider that if the loading dock is not removed the appellee would have virtually the entire use of the alleyway property of Kazos as long as the leases of Weatherwax, Inc., and Ginsberg's, Inc., continued and without the payment of a single cent of rent to the appellant. When the loading dock is removed there is nothing to prevent trucks backing into the alleyway and up to the Ginsberg property.

IV. It is suggested that the supplemental contract, Exhibit G, is lacking in mutuality in that there is no mutuality of obligation and therefore an unenforceable agreement. Although the parties herein have not particularly developed this particular proposition in their briefs our research has disclosed that where one party reserves an absolute right to cancel or terminate the contract at any time mutuality is absent. 17 C. J. S. 452, section 100g, "Contracts." However, where a consideration appears elsewhere in a contract, the question of mutuality does not arise. Jessup & Moore Paper Co. v. Bryant Paper Co., 283 Pa. 434, 129 A. 559. It is also stated in Meurer Steel Barrel Co. v. Martin, 3 Cir., Pa., 1 F. 2d 687, 688, as follows:

"The terms 'consideration' and 'mutuality of obligation' are sometimes confused. 'Consideration is essential; mutuality of obligation is not unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, mutual promises must be binding on both parties. But where there is any other consideration for the contract, mutuality of obligation is not essential.' Moreover, a contract does not lack mutuality merely because its terms are harsh or its obligations unequal, or because every obligation of one party is not met by an equivalent counter obligation of the other party. 6 R. C. L. 686–692."

In the instant case it may be admitted that there is an optional contract relative to the termination of the use of the loading dock. However, the placing of this dock is not the essential feature of the contract. It was the closing of the alleyway to which Kazos gave his primary consent. The consideration on his part was his forbearance in permitting the closing of the alleyway so as to permit the improvements to be made by Weatherwax, Inc., and Ginsberg's, Inc., in extending their respective buildings to include the alleyway. As previously stated where there is other consideration the matter of lack of mutuality will not invalidate the agreement.

By virtue of our conclusion heretofore announced we reverse and remand for the entry of a decree in conformity with this opinion.—Reversed and remanded.

Bliss, C.J., and Hale, Garfield, Oliver, Smith, Mulroney, and Hays, JJ., concur.

Mantz, J., dissents.