**ADALEX LABORATORIES, Inc.**

v.

**KRAWITZ.**

**No. 35906.**

Supreme Court of Oklahoma.

May 4, 1954.

T. Austin Gavin, Tulsa, Fred J. Hoff-meister, St. Louis, Mo., for plaintiff in error.

Conner, Winters, Randolph & Ballaine, Tulsa, for defendant in error.

ARNOLD, Justice.

Plaintiff Louis E. Krawitz, doing business as Adalex Distributing Company, brought this action in the District Court of Tulsa County against Adalex Laboratories, Inc., a corporation, for injunction enjoining defendant from breaching an exclusive sales agency contract theretofore entered into by plaintiff and defendant, for an accounting, and for damages sustained by reason of the alleged breach. Temporary injunction was granted upon hearing of plaintiff's request therefor. Thereafter defendant filed answer consisting of general denial, admitting the execution of the contract sued upon, denying breach thereof, alleging fraud in the inception of said contract, asserting lack of mutuality, ambiguity, lack of consideration in the contract, asserting that the contract was made without authority of the Board of Directors of the corporation, that plaintiff has a complete, speedy, and adequate remedy at law, and by way of cross-petition prayed for damages against plaintiff.

In substantial compliance with the allegations of his petition plaintiff's evidence reasonably tends to show that Adalex Laboratories, Inc., was a domestic corporation; that all shares thereof except a few qualifying shares were owned by Mrs. Dorothy Etherton, who was president and acted as general manager of the corporation; that said corporation was the owner of a secret formula (on which there was pending an application for patent) for a medical salve called Adalex Ointment; that it was engaged in the manufacture of this salve; that on February 2, 1951, through its president Mrs. Etherton, it entered into an exclusive distributor's contract with plaintiff, Louis E. Krawitz, for the sale of such ointment in three states for one year; that this contract provided that if plaintiff purchased as many as 20,000 jars of ointment he would have the option of continuing the contract for an additional year; that in about May of 1951 the plaintiff completed the purchase of 20,000 jars; that meanwhile the parties had been discussing the probability of entering into a new contract; that on or about May 29, 1951, Mrs. Etherton and plaintiff met in plaintiff's place of business in St. Louis, Missouri, and went over the provisions of a new contract in detail; a Mr. Wintraub, plaintiff's brother-in-law, happened to be present and made notes of the agreement which notes were typed into the rough draft of a tentative agreement and transmitted by Mrs. Etherton to her lawyer in Tulsa; this lawyer drew up a proposed form of contract which after examination Mrs. Etherton sent to plaintiff together with a suggested additional clause which she herself typed; that after further correspondence Mrs. Etherton made a trip to St. Louis to see plaintiff on about July 9, 1951; that after further discussion of various clauses of the proposed contract the parties agreed on the terms thereof and at Mrs. Etherton's request and suggestion plaintiff's lawyer put into a separate instrument one provision of the contract which required defendant to disclose the secret formula to plaintiff and teach him how to make it; that Mrs. Etherton read over the final draft of the contract as prepared by the lawyer then suggested that the parties execute same at once; that on July 10, 1951, Mrs. Etherton and plaintiff signed both instruments composing the entire agreement before a notary public, after which Mrs. Etherton returned to Tulsa; that the new contract provided that plaintiff should be the sole distributor of Adalex Ointment in all of the United States except Oklahoma; that plaintiff was required to purchase 10,000 jars at the time of the execution of the contract and a specified quota each month thereafter commencing with an additional 5,000 jars not later than August 31, 1951, and 5,000 jars in each of the months of September and October, 1951, the quota per month increasing progressively until January 1, 1953, at which time and thereafter plaintiff was required to purchase a minimum of 10,000 jars per month, the agency to last under the contract as long as plaintiff purchased the specified quota; that under the contract if plaintiff failed to purchase his quota for three successive months defendant at its option could terminate the contract upon six months' notice but plaintiff was required to purchase his full quota during each of such six months; plaintiff could cancel up-

on six months' notice but was required to purchase his full quota during each of such six months; that at the time of signing this new contract plaintiff gave an order for the 10,000 jars which he was required to purchase at its inception and paid defendant therefor in advance; that on becoming distributor in February, 1951, plaintiff had immediately entered into a campaign to advertise and sell the ointment, had employed salesmen to promote the product and stimulate trade, and after entering into the new contract continued such efforts, spending a considerable sum of money totalling about $15,000 in all in promoting demand and building good will for the product; that plaintiff ordered the 5,000 jars which he was required to order before August 31, but gave instructions not to ship the last 1500 of the order until August 30th to give him more time to prepare space in his stockroom to store it; that this order was paid for in advance and in addition at defendant's request plaintiff advanced defendant an additional sum to be applied to future orders so that defendant would have funds to buy supplies to make the ointment; that on August 23, 1951, defendant wrote plaintiff stating that her lawyer had advised her that the contract of July 10, 1951, was unenforceable and stating that unless plaintiff entered into a new contract defendant would get a new distributor and advised plaintiff to get in touch with its attorney in St. Louis; plaintiff replied that, if defendant attempted to get a new distributor it would do so at its own risk; that on August 27th Mrs. Etherton as president of defendant wrote plaintiff again that her attorney advised her that the contract was not binding, that she was giving notice that she thereby cancelled the contract of July 10, 1951; on September 20, 1951, she wrote another letter to plaintiff telling him the contract was cancelled and to go ahead and sue; that on the same date she wrote to various dealers whose trade plaintiff had secured telling them that plaintiff was no longer distributor for Adalex, to return any of the product in their possession to plaintiff and to send all future orders for the product to defendant; that defendant was the sole manufacturer

of the ointment and plaintiff could not procure the ointment elsewhere.

Defendant's evidence is not in substantial conflict with the above; in fact, Mrs. Etherton admitted most of the above facts and assigned as her reason for her attempted cancellation of the contract the fact that her attorney had told her it lacked mutuality and was invalid.

The trial court found that all of the allegations of plaintiff's petition were sustained by the evidence; that plaintiff had no adequate remedy at law; that because of unlawful cancellation of the contract by defendant plaintiff sustained damages in the amount of $10,000 from the date of such cancellation until the temporary restraining order was issued, and rendered judgment permanently enjoining and restraining defendant from breaching any of the negative covenants of the contract of July 10, 1951, from appointing any other persons or corporations except plaintiff as agents or distributors of Adalex Ointment outside the State of Oklahoma, from selling Adalex Ointment to any person except plaintiff outside the State of Oklahoma, and from stating or inferring to any third person that said contract is no longer in effect, and rendered judgment against defendant for the sum of $10,000 damages accrued to the date of the temporary injunction.

From order overruling motion for new trial defendant appeals.

Defendant first contends that the contract sued upon is void for lack of mutuality because under the contract plaintiff has the right or option to terminate and cancel at any time by giving six months' notice of such intention and defendant has no corresponding right. In connection with this argument he cites a number of Federal cases which set forth the rule that where the only consideration of a contract consists of a promise for a promise a provision in a contract allowing either party to cancel at will renders the contract void for lack of mutuality.

 Lack of mutuality means lack of consideration; where there is no other consideration for a contract mutual promises must be binding on both parties to consti-

tute consideration. But where there is independent and valuable consideration for the contract so that each promise does not depend upon the other for consideration mutuality of obligation is not essential. 12 Am.Jur.Contracts page 511; York Metal & Alloys Co. v. Cyclops Steel Co., 280 Pa. 585, 124 A. 752. And where a consideration appears elsewhere in a contract the question of mutuality does not arise. Jessup & Moore Paper Co. v. Bryant Paper Co., 283 Pa. 434, 129 A. 559. An option supported by a consideration is valid notwithstanding lack of mutuality. Waters-Pierce Oil Co. v. Progressive Gin Co., 59 Okl. 262, 159 P. 349; Merchants' Life Ins. Co. v. Griswold, Tex.Civ.App., 212 S.W. 807. See also Ash v. Chas. F. Noble Oil & Gas Co., 96 Okl. 211, 223 P. 175; Leisy Brewing Co. v. Schafer, 91 Okl. 105, 216 P. 109. As shown above plaintiff, as he was required to do under the contract, purchased 10,000 jars at the time the contract was signed and continued purchasing the monthly quota called for by the contract until the contract was cancelled by defendant. He spent large sums of money in advertising and creating a market for the product. In addition as consideration for his option to cancel his contract he was required to give six months' notice during which period he had to continue to purchase the monthly quotas specified in the contract. All of these factors are sufficient to show an independent consideration and to bring this contract within the rules cited above.

◼ Defendant next contends that plaintiff had a speedy and adequate remedy at law for damages for breach of the contract and therefore injunction will not lie to enjoin the breach. The evidence shows that it would be very difficult to ascertain the damages which would result in the future from the breach; that while plaintiff could calculate the amount of damages occurring up to the time of the breach he could not calculate with any certainty the loss of profits which would be sustained from the sale of a new product, for which good will and demand had to be created, and which product could not be obtained elsewhere. In such a case equity will intervene and enjoin the

breach. See 28 Am.Jur., Injunction, Sec. 39, p. 237; Strobeck v. McWilliams, 42 N.D. 30, 171 N.W. 865; Ed. Schuster & Co. v. Kuryer Pub. Co., 165 Wis. 327, 162 N.W. 173, 7 A.L.R. 1437; Nokol Co. of Mo. v. Becker, 318 Mo. 292, 300 S.W. 1108; Carpenters' Local 1686 v. Wallis, 205 Okl. 285, 237 P.2d 905.

◼ The injunction granted in this case was against the violation of the implied negative covenant in the contract to the effect that defendant would not engage any other person to sell the product in the same territory or interfere in the agent's business in the territory assigned to him. Such a negative covenant will be enforced even in the absence of mutuality in the affirmative obligations of the contract. See 28 Am. Jur., Injunctions, Sections 77 and 81; Husting Co. v. Coca Cola Co., 205 Wis. 356, 237 N.W. 85, 238 N.W. 626, 84 A.L.R. 22.

Defendant next contends that the separate contract entered into on July 10, 1951, providing that defendant would teach the formula to plaintiff is not supported by sufficient consideration. While in our opinion the evidence is clear that both instruments were part and parcel of the same transaction and were supported by the same consideration, the evidence also shows that defendant has not disclosed the formula to plaintiff and plaintiff has not asked that this provision be carried out in this lawsuit. Whether it is or is not a separate contract and whether it is or is not supported by sufficient consideration is therefore not material here.

◼ Lastly, defendant urges that the contract is void because it was not approved by the board of directors of the defendant company. As shown above, the evidence shows that Mrs. Etherton was president and acted as general manager of the corporation without objection. It is therefore bound by her acts. Mid-West Chevrolet Corp. v. Noah, 173 Okl. 198, 48 P.2d 283; Park Addition Co. v. Bryan, 102 Okl. 205, 228 P. 959.

Defendant does not contend that the court could not as an incident to its equitable jurisdiction render judgment for accrued damages or that the evidence is insufficient to sustain the judgment. It contends that

plaintiff's action was at law, not equity, and therefore a court of equity had no power to grant plaintiff the relief sought. Inasmuch as the court did have power to grant plaintiff the injunctive relief which he sought under the circumstances existing in this case it follows that the court had the power to render judgment against defendant for accrued damages.

Affirmed.

JOHNSON, V. C. J., and CORN, DAVISON, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.